### Eva Marie NEAL *v.* HANFORD PRODUCE Company and MARYLAND CASUALTY Company, Insurance Carrier

74-85                                                  511 S.W. 2d 636

Opinion delivered July 22, 1974

[Rehearing denied September 23, 1974.]

*Parker Parker*, for appellant.

*Jones, Gilbreath & Jones*, for appellees.

J. FRED JONES, Justice. This is a workmen's compensation case in which the appellant, claimant-employee, Mrs. Eva Marie Neal, was awarded a 20% permanent partial disability to the right arm below the elbow. The award was affirmed on appeal by the circuit court and the circuit court denied Mrs. Neal's motion to remand to the Commission for the submission of newly discovered evidence. On appeal to this court Mrs. Neal contends that she is totally and permanently disabled and there was no substantial

evidence before the Commission to the contrary. She also contends that the trial court abused its discretion in refusing to remand the case to the Workmen's Compensation Commission for the purpose of hearing additional testimony.

It is, of course, well settled that this court, as well as the circuit courts on appeals, in workmen's compensation cases, must affirm the award or decision of the Commission if there is any substantial evidence to support the decision or award. *Tigue* v. *Caddo Minerals Co.*, 253 Ark. 1140, 491 S.W. 2d 574. With the issue thus narrowed, we proceed directly to that question in the case at bar.

Mrs. Neal had worked for a number of years in a chicken or poultry processing plant and on July 16, 1969, she suffered pain and swelling in her right arm following prolonged and rapid use of the right hand in removing crops and the intestines from chicken carcasses, apparently while the carcasses were moving on an assembly line type of apparatus above Mrs. Neal's head. Mrs. Neal's condition was diagnosed by the company doctors as tendinitis and she was treated for that condition. The condition was accepted by the employer and compensation insurance carrier as occasioned by accidental injury as alleged by Mrs. Neal and her temporary total disability was compensated without controversion. Mrs. Neal did not respond to the medical treatment recommended and administered by numerous doctors, including orthopedic specialists who were treating her for tendinitis, bursitis and other conditions relating only to her right arm. When the attending physicians apparently concluded they could do nothing further to relieve Mrs. Neal's condition, differences arose between the attorneys as to further medical examinations.

Mrs. Neal's attorney insisted that she be sent to Dr. Joe K. Lester, an orthopedic surgeon in Little Rock, for additional examination and possible treatment, and the respondent insisted that she be sent to a clinic in Fort Smith for that purpose. The Referee resolved the impasse between attorneys by referring Mrs. Neal to Dr. Charles McKenzie, an orthopedic surgeon in Little Rock, for examination. Dr. McKenzie rendered his report to the Commission on August

28, 1970. Dr. McKenzie's medical report is not well abstracted but that portion most germane to the question before us appears as follows:

> "X-RAY EXAMINATION: * * * AP, lateral and oblique views of the cervical spine reveal the patient has rudimentary cervical ribs. There are degenerative changes at the C3-C4 and C5-C6 levels. There is some narrowing at the C5-C6 level, and to a slightly lesser degree at the C3-C4 level. There is foraminal encroachment, somewhat greater on the left than on the right.
>
> * * *
>
> DIAGNOSIS I: Degenerative joint disease, cervical spine.
>
> DIAGNOSIS II: Possible rheumatoid arthritis.
>
> OPINION: * * * The changes in the cervical spine are long-standing and account for the pain in the intrascapular area, *and this is not related to the injury she describes with the hand.* I do not see anything to indicate a shoulder-hand syndrome and I would suggest she continue on her anti-rheumatoid medication as I think this will give her some relief. * * *" (Emphasis added).

Mrs. Neal's attorney had her examined by Dr. Joe K. Lester on October 6, 1970, and the pertinent portions of his report, dated November 3, 1970, are as follows:

> "At the time of this examination she still complains of severe headaches, neck, and right arm pain. She complains of tingling and numbness in the fingers of the right hand, the middle three being the most severely involved.
>
> Examination of the right arm at this time reveals interesting atrophy of the flexor tendon group and some suggestion of nerve involvement of the median nerve. Examination of the neck reveals marked restriction of motion and accompanying stiffness, but no definite muscle spasm.

> X-rays of the cervical spine were obtained. These films reveal evidence of degenerative disc disease most pronounced at C5-C6 with some posterior wedging. Oblique films do show evidence of some foraminal encroachment.
>
> Parker, this patient has had adequate orthopedic evaluation. In the opinion of this examiner, she should have an electromyogram and possibly a cervical myelogram. She does have evidence of neurological involvement manifested by atrophy and a suggestion of some reflex sympathetic dystrophy of the right hand."

It is noted that Dr. Lester does not mention the relation, or lack of it, between the disc condition and the injury described by Mrs. Neal.

The Referee's opinion was filed on January 25, 1971, and amended on February 4, 1971, whereby, on the basis of other medical reports, Mrs. Neal was awarded a 10% permanent partial disability to her right arm below the elbow. Following review by the full Commission, its opinion was filed on June 16, 1971, under which Mrs. Neal was awarded 20% permanent partial disability to the right arm under pertinent findings stated as follows:

> "That claimant suffered from degenerative joint disease of the cervical spine not connected with her injury that arose of and in the course of her employment.
>
> That as a result of said injury, claimant has sustained a 20 percent permanent partial disability to the right arm below the elbow, or 30 weeks."

On July 16, 1971, Mrs. Neal perfected her appeal to the circuit court. On July 27, 1971, the respondent-appellees filed a motion in circuit court to dismiss the appeal. Apparently the appeal lay dormant in the circuit court until on January 13, 1972, Mrs. Neal filed a motion in circuit court to remand the case to the Commission for the introduction and consideration of newly discovered evidence.

It appears that while the appeal was pending in the circuit court, Mrs. Neal followed Dr. Lester's recommendation as to myelogram and as a result of such procedure, under the sponsorship and authority of the Arkansas Rehabilitation Service, an extruded disc was surgically removed by Dr. Lester from the C5-C6 level of Mrs. Neal's cervical spine on October 14, 1971. Following a fusion performed by Dr. Lester, Mrs. Neal experienced dramatic results in the relief of pain and other symptoms in the right arm. Under date of October 26, 1971, Dr. Lester reported to the Rehabilitation Service in part as follows:

> "As a follow-up to previous correspondence in her regard, Mrs. Neal was admitted to Memorial Hospital on October 12, 1971, and a cervical myelogram performed October 13, 1971. This revealed evidence of an extruded disc at C5-C6. Therefore, anterior disc removal was performed October 14, 1971, together with anterior cervical fusion. Her post-operative course was excellent with dramatic relief of pain and she was permitted to be discharged home October 19, 1971.
>
> Myelographic findings at this time unequivocally show that this patient's problems have been related to an extruded disc at C5-C6 and this has been the cause of her arm pain. This examiner feels it is unfortunate the State and Federal Government have been placed in the position of paying for medical services which probably were related to an industrial injury. The main thing from the standpoint of the patient is that she now has relief of her longstanding arm pain. However, by copy of this report to her attorney, he is being informed of our findings. If it is possible for him to recover this money, certainly we will be happy to return it to the Rehabilitation Service as we know your funds are unfortunately only too limited."

In Dr. Lester's subsequent deposition taken on March 22, 1972, in connection with Mrs. Neal's motion to remand, his testimony appears in part as follows:

"Q. Dr. Lester, did you have occasion to have Eva Marie Neal as a patient?

A. Yes, sir.

Q. When did she first come to you?

A. I first saw her on October 6, 1970.

Q. What was your diagnosis?

A. My diagnosis was degenerative disc disease of the cervical spine, C-5, C-6, with posterior wedging. She had evidence of neurological involvement with atrophy. And I felt at this time she should have an electro-myelogram and possibly a cervical myelogram to evaluate her from the standpoint of a cervical disc.

Q. Did she follow your advice?

A. Approximately one year later she did, sir. She came back into the office and we admitted her to Memorial Hospital. Did a cervical myelogram on October 13, 1971. This myelogram showed a persistent extra dural defect at the C-5, C-6 interspace, bilaterally into the right, which was consistent with herniation or rupture of the intervertebral disc.

* * *

A. She stated that she worked for a produce company where she was required to do multiple, rather rapid, repetitive movements with her hands, using scissors I believe.

Q. Pulling craws?

A. Yes, sir.

Q. Do you connect that type of work with her injury?

A. Yes, sir, I do.

Q. Have you seen other cases similar?

A. Yes, sir, I have seen one in particular almost identical, yes.

Q. In other words, that is an occupational hazard that an employee has to go through if they stay on that kind of work too long?

A. Yes, sir. I think this may be perhaps an unrecognized occupational hazard, but I feel very strongly that this is an occupational hazard."

We shall not pass upon or discuss the extent of the circuit court's jurisdiction to remand a compensation case to the Commission for additional testimony on the grounds of *newly discovered evidence* because that question is not properly before us in the case at bar. Dr. McKenzie as well as Dr. Lester found evidence of degenerative joint and disc disease in the cervical spine as early as August and September, 1970, while the claim was still pending before the Commission Referee.

As already pointed out, this court as well as the circuit court, is bound by the substantial evidence rule in workmen's compensation cases on appeal. In the case at bar Dr. McKenzie expressed the opinion that the changes in Mrs. Neal's cervical spine were of long standing and were not related to the injury she described. There is nothing alleged in "newly discovered evidence" that was not before the Commission, or by diligent effort could have been before the Commission, while the matter was still pending before that body. The question before the Commission was not whether Mrs. Neal did or did not have an extruding disc in her cervical spine, and the question was not whether the extruding disc caused the pain and other symptoms in Mrs. Neal's right hand and arm. The real question before the Commission was whether Mrs. Neal's disc condition was related to her occupational injury. Dr. McKenzie said it was not and the Commission had a right to accept his opinion and base its decision or award thereon.

Mrs. Neal's attorney as well as Dr. Lester refer to "occupational hazard" in connection with Mrs. Neal's occupa-

tion and her condition. There is considerable difference between "occupational hazards" and "occupational diseases" in relation to workmen's compensation law. The occupational diseases are defined under Ark. Stat. Ann. § 81-1314 (Repl. 1960), but occupational hazards are incidental to most all industrial occupations. In any event, the relationship between either an occupational disease or an occupational hazard and the disability complained of, boils down to a question of fact to be established by competent evidence.

We are of the opinion that the trial court did not abuse its discretion in refusing to remand Mrs. Neal's case to the Commission for further evidence. We are also of the opinion that there was substantial evidence to sustain the findings and award of the Commission, and that the judgment of the trial court must be affirmed.

The judgment is affirmed.