Tony LONG *v.* WAL-MART STORES INC.

CA 06-401 250 S.W.3d 263

Court of Appeals of Arkansas
Opinion delivered February 21, 2007

[Rehearing denied April 4, 2007.]

*Spencer Law Firm*, by: *Frederick S. "Rick" Spencer*, for appellant.

*Bassett Law Firm, LLP*, by: *Curtis L Nebben*, for appellee.

ROBERT J. GLADWIN, Judge. This appeal follows the January 25, 2006 decision of the Workers' Compensation Commission (Commission) affirming the February 1, 2005 opinion of the Administrative Law Judge (ALJ) with respect to the findings that appellant Tony Long failed to establish by a preponderance of the credible evidence that he sustained a new injury to his back as a result of lifting a television while working for appellee Wal-Mart on September 2, 2003, and that he failed to proffer the necessary medical evidence supported by objective findings that he had sustained a new

injury. Additionally, the Commission rejected appellant's challenges regarding the constitutionality of the Arkansas Workers' Compensation statute, Act 796 of 1993, and the workers' compensation system's structure, finding that appellant failed to overcome the statute's presumption of constitutionality. Finally, the Commission found that appellant failed to prove that either the Commission or ALJs had been pressured to rule for or against claimants, noting specifically that he had offered no evidence that either the ALJ or the Commissioners in this particular case were biased in any way.

Appellant raises seven points on appeal: (1) that there is a lack of substantial evidence to support the Commission's decision that appellant failed to prove a compensable injury; (2) that the Commissioners abused their discretion by failing to recuse from this case; (3) that the Commission's refusal to grant a continuance or allow a dismissal without prejudice was an abuse of discretion that denied appellant his due process rights; (4) that the Commission's denial of his motion to remand and file additional evidence was improper and not supported by the facts or the law; (5) that appellant's evidence established that the executive branch of the State of Arkansas and private interests have exerted pressure on the ALJs and the Commission, which has infringed upon their decisional independence and resulted in actual bias and the appearance of bias; (6) that an administrative quasi-judicial procedure that does not provide safeguards to protect the decisonal independence of hearing officers violates the separation of powers doctrine established by the Constitution of the State of Arkansas; (7) that the external pressure exerted by political and private interests upon the quasi-judicial administrative decision makers violates the due-process rights of the parties appearing before the agency and invalidates and renders void the adjudicative procedure of the agency. We find no merit in these arguments; accordingly, we affirm.

Prior to recounting the details of the claim in the instant case, we first review a brief history of appellant's medical condition. Appellant originally injured his back in 1997 while working as a welder for Big John's Manufacturing.[1] He did not undergo surgery as a result of that injury, but received treatment from Dr. Krug, a chiropractor, and medication. Appellant has admitted that

---

[1] In total, appellant has filed six worker's compensation claims against previous employers, but this was the first one that dealt with a back injury.

he never fully recovered from that injury. He continued to work for Big John's until 2001, with a lifting restriction of fifty to sixty pounds. He then worked at Prospect Steel until March or April 2003, again with lifting restrictions. Subsequently, he worked as a welder for Defiance Metal and Chapparal Trailers in positions that required little to no lifting, and then briefly for United Sanitation as a garbage collector, with average lifting requirements of twenty-five to thirty pounds. Finally, he worked with a Mr. Cartright, making jewelry, just prior to being hired by appellee.[2]

Appellant has quite a significant history related to his medical treatment during the time frame between his initial back injury and the alleged incident at issue in this case. Subsequent to his chiropractic treatment with Dr. Krug, appellant sought an initial evaluation regarding his low-back pain from Dr. Frank Bivens in June 1999. On July 6, 1999, an MRI of appellant's lumbar spine indicated degenerative-disc disease at L3-L4 and L4-L5, as well as disc herniations at L3-L4. Dr. Bivens referred appellant to pain specialist Dr. Jeffrey Ketcham and orthopedic surgeon Dr. Wayne Bruffett for his degenerative-disc disease. On June 20, 2001, Dr. Ketcham examined appellant, noting that he had suffered from intractable low-back pain and right-leg pain for about four years, and acknowledging that aggravating factors for the condition included damp weather, weather changes, physical activity, pressure, sitting for long periods, sitting, walking, tension, fatigue, coughing, sneezing, and driving a car. Dr. Ketcham performed epidural steroid injections on appellant's back at that time.

On July 30, 2002, appellant underwent another MRI, which revealed central-disc protrusion at L3-4 with indentation upon the ventral aspect of the thecal sac and slight disc protrusion at L4-5, consistent with his previous MRI and indicating no changes. On September 5, 2002, appellant underwent a lumbar discogram that showed levels consistent with degenerative-disc disease.

On May 1, 2003, Dr. Bivens diagnosed appellant with hypertension, gastroesophageal reflux disease (GERD), degenerative-disc disease, hypertriglyceridemia, and herniated nucleus pulposus (HNP), and prescribed MS Contin, a morphine derivative, and Ultram for appellant's breakthrough pain. In June 2003, appellant applied for Social Security disability benefits. On June 26, 2003, Dr. Bivens

---

[2] Dr. Bivens testified in his deposition on January 12, 2005, that his notes from June 26, 2003, indicate that appellant had been fired from his last two jobs because of back pain.

examined appellant regarding complaints of severe pain because the MS Contin was no longer fully relieving the pain. At that time, Dr. Bivens noted that appellant suffered from HNP and hypertension. He also discussed vocational rehabilitation with appellant due to his inability to work, and again referred him to Dr. Bruffett. Appellant thereafter saw Dr. Bivens or one of the other doctors for his back condition from once a month to every three months, and he continued taking Morphine or MS Contin, Vioxx, Xaniflex, and either Ultram or Vicon for his pain.

In August 2003, appellant began working for appellee as a stocker, although he had previously received prescribed activity limitations with respect to bending, stooping, twisting, and turning. He had been working for appellee for approximately six weeks, when on September 2, 2003, another employee asked appellant to move a twenty-seven inch Apex television. He did so, and later, he acknowledged that at the time he was neither in pain nor heard a snap or pop as he had with his original back injury. He was able to complete his shift and did not inform anyone at work that an accident had occurred.

Appellant testified that he began to feel pain in his lower back the following day, and on September 4, 2003, he saw Dr. Bivens for what Dr. Bivens described as severe pain in appellant's right leg, mainly just below his knee on the lateral-posterior calf, that he had been experiencing for the previous two or three days. Dr. Bivens prescribed Neurontin 300 mg., which can be used for chronic pain and restless-leg syndrome. Appellant claims that Dr. Bivens instructed him not to return to work for one week, but Dr. Bivens's notes do not confirm that assertion. Appellant next called Dr. Bivens on September 8, 2003, and told him that he needed a work excuse because his pain had worsened.

Appellant filed a workers' compensation request for medical care related to the alleged back injury on September 8, 2003, at which time appellee sent him to Dr. Mark Woods for an examination. Dr. Woods noted that appellant had a "low back strain and chronic back pain." Dr. Woods prescribed two medications for appellant, Oxycodone and Flexeril, and restricted him from work for seven days.

During that time period, store manager Mr. Rick Wallace reported that appellant had shown gross misconduct toward two women at the store, and appellant was terminated on September 23, 2003. It was also revealed that appellant omitted prior felony convictions from his employment application. With regard to

appellant's lying on his application regarding past felony convictions, appellant testified that it was his understanding that appellee could not ask about anything that happened more than seven years ago. He stated that he had not been convicted of any felonies in the past seven years, but had been convicted of possession with the intent to sell controlled substances in 1981 and for breaking or entering in 1994.

On October 3, 2003, an additional MRI of appellant's spine indicated degenerative-disc disease at L3-4 and L4-5 with herniated disc material at both levels. Dr. Bivens testified that these results were again consistent with appellant's previous MRI results with no changes. At that time, Dr. Bivens wrote a letter for appellant, attributing his inability to work to his preexisting HNP diagnosis; however, on November 2, 2004, Dr. Bivens wrote a letter at appellant's request, stating that appellant had aggravated his back condition during the alleged September 2, 2003, accident. Dr. Bivens subsequently stated that the latter opinion was not based on any objective findings, but rather solely on information given to him by appellant. Further, Dr. Bivens testified that he did not know of anything objectively different about appellant's condition after the September 2, 2003, lifting incident than before it occurred.

Appellant complained that because of his chronic back pain, he is basically unable to do anything but sit or lie on the couch. However, he later admitted under oath that he was able to shoot a deer and load it into his vehicle single-handedly subsequent to the alleged September 2, 2003, injury.

The ALJ continued the matter for a telephone conference on March 26, 2004, at the request of appellant's counsel. The scheduled telephone conference was continued a second time, again upon appellant's counsel's request, on April 22, 2004. On June 29, 2004, a prehearing order was filed, which scheduled a hearing in this case for approximately four months later on November 3, 2004, and stated that no changes to the hearing schedule would be made without good cause. Appellant's attorney requested a continuance on October 4, 2004, in order for him to take the deposition of Dr. Bivens. The ALJ denied the request but allowed appellant additional time to take the deposition. On October 21, 2004, appellant's counsel again requested an indefinite continuance or alternatively dismissal of the claim without prejudice, without stating any explanation or justification for the request. The ALJ denied both requests in an order filed on October 25, 2004.

At the hearing before the ALJ on November 3, 2004, appellant's counsel made a record concerning the denial of his request for an additional continuance; however, he did not raise or preserve any constitutional issues during that portion of the hearing. Appellant's counsel requested another continuance because his additional two witnesses were not present for the hearing. He explained that he had told appellant that his October 4, 2004, request for a continuance would probably be granted, and the witnesses then made other plans for the scheduled date of the hearing. His motion was again denied, and the hearing proceeded.

Dr. Bivens's deposition was taken on January 12, 2005, and entered into evidence in this matter. The ALJ issued his opinion on February 1, 2005, in which he: (1) denied appellant's November 3, 2004, motion for an indefinite continuance or voluntary dismissal; (2) determined that appellant had failed to establish by a preponderance of the credible evidence that he sustained a compensable new injury as a result of lifting the television at work on September 2, 2003; (3) found that appellant had failed to proffer the necessary medical evidence supported by objective findings that he had sustained a compensable new injury. With respect to appellant's motion for a continuance on the date of the hearing, the ALJ specifically explained that when appellant's counsel advised appellant to release the witnesses before the ALJ had responded to appellant's motion, his counsel knowingly assumed the risk that the motion would be denied. The ALJ also found that the proffered testimony of the two absent witnesses did not bear on the causation and objective medical findings analysis. The ALJ also pointed out that he was unable to locate any court decisions regarding how, if at all, voluntary dismissals pursuant to Ark. R. Civ. P. 41 apply to proceedings before the Commission and stated that pursuant to section 27 of the Arkansas Workers' Compensation Act, codified at Ark. Code Ann. § 11-9-705(a) (Repl. 2002), the Commission has deemed the granting of a motion for a voluntary dismissal a matter of discretion with the Commission rather than mandatory.[3]

Appellant appealed to the Commission, filing numerous motions and raising, for the first time, multiple arguments challenging the constitutionality of the Arkansas Workers' Compen-

---

[3] The decision to which the ALJ referred is a Workers' Compensation Commission opinion filed on November 3, 1987, *Bertha Marie Cox v. Town & Country Discount Foods*, W.C.C. No. D514450, which does not appear to have been appealed.

sation statute, Act 796 of 1993, and the workers' compensation system's structure. In its opinion dated January 25, 2006, the Commission affirmed the ALJ's opinion with respect to compensability and rejected the constitutional challenges, finding that appellant had failed to overcome the statute's presumption of constitutionality. Finally, the Commission found that appellant failed to prove that either the Commission or the ALJs had been pressured to rule for or against claimants, noting specifically that he had offered no evidence that the ALJ in this particular case was biased in any way. It is from this decision that appellant brings this appeal.

### I. Substantial Evidence Supports the Commission's Denial of Benefits

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab. Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems

worthy of belief. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. A G Processing, Inc.*, 360 Ark. 491, 202 S.W.3d. 519 (2005). As our law currently stands, the Commission hears workers' compensation claims de novo on the basis before the ALJ pursuant to Ark. Code Ann. § 11-9-704(c)(2), and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *See Bray v. Int'l Wire Group*, 95 Ark. App. 206, 235 S.W.3d 548 (2006).

Substantial evidence exists to support the Commission's findings that appellant failed to prove by a preponderance of the credible evidence that he sustained a compensable injury on September 2, 2003, either a new injury to his back or an aggravation of his pre-existing back injury. In order to be entitled to benefits, appellant is required to show: (1) that he suffered an injury arising out of and in the course of his employment; (2) that the injury was caused by a specific incident; (3) that the injury caused internal or external physical harm to his body; (4) that the injury is supported by objective findings; (5) that the injury was the major cause of the disability or need for medical treatment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). As the claimant, appellant bears the burden of proving a compensable injury by a preponderance of the credible evidence. *See* Ark. Code Ann. § 11-9-102(4)(E)(i).

There is substantial evidence to support the Commission's finding that appellant failed to meet his burden on a number of points. A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Repl. 2002); *Crawford v. Single Source Transp. Fidelity & Cas. Ins. Co.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004). Objective findings are those findings which cannot come under the voluntary control of the patient. *Crawford, supra.* In order to prove a compensable injury the claimant must prove, among other things, a causal relationship between his employment and the injury. *Id.* The determination of whether a causal relationship exists is a question of fact for the Commission to determine. *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002).

It is undisputed that appellant has suffered from chronic, severe back pain since at least 1997, when he originally injured his back while working as a welder for Big John's Manufacturing. He admits never fully recovering from that injury and has continued seeking treatment and medication without significant improvement. An MRI as far back as July 1999 indicated that appellant has degenerative-disc disease and herniations at L3-4 and L4-5 in his lumbar spine, and another MRI in July 2002 showed protrusion at L3-4 and L4-5. A discogram in September 2002 showed an abnormality at L5-S1, and he was diagnosed with HNP in May 2003. The record indicates that those conditions are aggravated by numerous common factors, including damp weather, weather changes, physical activity, pressure, sitting for long periods, sitting, walking, tension, fatigue, coughing, sneezing, and driving a car.

Subsequent to the alleged injury on September 2, 2003, Dr. Bivens did not indicate any sort of work-related accident or injury in his notes from an examination of appellant on September 4, 2003, and testified that he did not recall appellant mentioning the alleged work accident until October 20, 2003. Likewise, he did not indicate any objective findings such as bruising, swelling, or spasms in appellant's back. An MRI on October 3, 2003, confirmed the pre-existing degenerative disc disease at L3-4 and L4-5 with herniated disc material at both levels, consistent with the previous MRI results.

■ The record in this case is void of medical evidence supported by objective findings demonstrating that appellant suffered a compensable injury on September 2, 2003. There is no indication of any abnormality or other objective findings resulting from the alleged September 2, 2003 incident. Additionally, appellant failed to prove that he suffered an aggravation of the pre-existing back condition. It is well settled that the employer takes an employee as he finds him. *Smith-Blair, Inc. v. Jones, supra.* However, an aggravation is a new injury resulting from an independent incident. *Id.* Being a new injury with an independent cause, an aggravation must meet the requirements for a compensable injury. *Id.* As with the discussion of an alleged new injury, appellant has failed to put forth any medical evidence supported by objective findings demonstrating that he suffered a compensable aggravation of the previous condition. Accordingly, we affirm with regard to the compensability of the evidence.

## II. Additional Issues

When reviewing the Commission's ruling on motions, this court adopts an abuse of discretion standard. *See Walker v. J & J Pest Control*, 6 Ark. App. 171, 639 S.W.2d 748 (1982) (stating that in the absence of any action by the legislature, this court adheres to the rule that the Commission's decision not to reopen a case will not be disturbed absent abuse of discretion or arbitrary or capricious action). In addition, this court has made it clear that questions regarding the admissibility of evidence are matters entirely within the trial court's discretion, and such decisions should not be reversed absent an abuse of that discretion. *J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001).

After the ALJ issued his order denying appellant's compensation claims, appellant filed a motion for remand for the consideration of additional issues and for the introduction of additional evidence or, alternatively, for permission to present additional issues and additional evidence to the full Commission on appeal. The "new evidence" related to affidavits of former ALJs William Daniels, executed on March 21, 2005, and Michael White, executed on March 1, 2005, which he claimed were relevant to the ruling on appellant's counsel's request for a continuance. Appellant maintained that this evidence provided proof that the ALJs and Commissioners felt pressure from Arkansas's executive branch to rule on issues in a manner favorable to certain private business entities; thus, the evidence would provide further support for a motion to recuse and motion to remand for supplemental hearing before independent judiciary. On May 4, 2005, the Commission granted the motion with respect to the two affidavits, as they dealt with the issue of the continuance, which was raised before the ALJ, but denied the motion to remand.

Appellant subsequently moved to have additional evidence admitted into the record. The new evidence consisted of the depositions of six former Commissioners or prominent government employees. The depositions were taken in 1999 and 2000 as part of a federal lawsuit against Eldon Coffman, former chairman of the Commission, for the wrongful termination of an ALJ. The lawsuit was settled. These depositions supposedly contain admissions and additional evidence establishing that the Governor of Arkansas, by and through his designated agents, "responded" to complaints from private special-interest groups who disagreed with the manner in which the ALJ interpreted and applied the law in her cases. On October 7, 2005, the Commission filed an order

ruling on the motion, denying appellant permission to submit the additional evidence and again denying his request that the claim be remanded.

Appellant also filed a motion that the Commissioners recuse and a motion to remand for supplemental hearing before independent judiciary on or about May 20, 2005. That was followed by a motion for a ruling on the motions previously filed, which was filed on May 23, 2005. In an order filed June 24, 2005, the Commission denied appellant's motion, stating that appellant's attorney failed to demonstrate prejudice or a conflict of interest against him or his client. The order also indicated that the motion for remand was again denied. On January 25, 2006, the Commission affirmed the ALJ's opinion and rejected the additional constitutional arguments.

### (A) Recusal

Appellant filed a motion to recuse and to remand for supplemental hearing before independent judiciary on or about May 20, 2005, in which he asked for the recusal of each sitting Commissioner and ALJ and asked for the establishment of an independent tribunal to consider his workers' compensation claim and his constitutional challenges. The motion contained a general attack on the constitutionality of the Commission and the laws that govern its operation and asserted appellant's counsel's belief that the Commission was inherently biased.

When recusal is an issue, the judge has a duty to sit on a case unless there is a valid reason to disqualify. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 210 S.W.3d 126 (2005). A judge's decision not to recuse will not be disturbed absent an abuse of discretion, and the party seeking recusal must demonstrate bias. *Id.* In Arkansas, there is a presumption of impartiality on the part of judges, and the party seeking disqualification has the burden of proving otherwise. *SEECO, Inc. v. Hales*, 341 Ark. 673, 22 S.W.3d 157 (2000). The question of bias is usually confined to the conscience of the judge. *Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997). There is no duty to recuse where no prejudice exists. *U.S. Term Limits, Inc. v. Hill*, 315 Ark. 685, 870 S.W.2d 383 (1994). In addition, unless there is an objective showing of bias, there must be a communication of bias in order to require recusal for implied bias, and the mere fact that a judge has ruled against a party is not sufficient to demonstrate bias. *Turner, supra.*

■ Appellant presented the theory of a personal vendetta against his attorney; however, he provided no objective evidence of bias, nor did he show that there was an actual communication of bias, especially where, as here, neither the ALJ nor the Commissioners were serving in their positions during the time that the depositions that were submitted as additional evidence were taken. Similarly, appellant has failed to provide any objective evidence that would require the disqualification of any ALJ or Commissioner. The Commission did not abuse its discretion in denying appellant's motion for recusal and remand.

### (B) Refusal to Grant a Continuance or Allow a Dismissal Without Prejudice

Appellees maintain that appellant has waived this argument on appeal and has failed to demonstrate surprise or prejudice suffered as a result of the Commission's denial of his request for an additional continuance or for a dismissal without prejudice. We review this issue under an abuse-of-discretion standard. *See Walker, supra.* As such, the burden is on appellant to show that there has been an abuse of discretion; however, our supreme court has stated that "a party has no reason to complain of a refusal of a continuance in the absence of a showing of surprise." *Ark. State Hwy. Comm'n v. Montgomery,* 248 Ark. 830, 832, 454 S.W.2d 87, 88 (1970).

■ The Commission acted within its discretion in affirming the ALJ's denial of appellant's last motion for a continuance for multiple reasons. Initially, we note that because appellant failed to address the ALJ's denial of the motion for a continuance before the Commission, he abandoned the argument on appeal and cannot subsequently re-raise it before this court. *See Seay v. Wildlife Farms, Inc.,* 342 Ark. 503, 29 S.W.3d 711 (2000) (affirming the ALJ because the appellant had abandoned the argument on appeal by failing to discuss it). Also, even if this court were to address the merits, the argument fails because neither appellant nor his attorney was surprised by the November 3, 2004 hearing proceeding as scheduled after they had been given approximately four months' notice. *See Montgomery, supra.* Additionally, neither appellant nor his attorney was prejudiced in any way by the failure to obtain a continuance. The motion was originally filed in order to gain additional time to take Dr. Bivens's deposition. Dr. Bivens's deposition was taken and admitted into the record. Thus, appellant

was granted the relief he sought. Finally, as to the testimony of the two absent witnesses on the day of the hearing, we agree with the ALJ's observation that their testimony related to an issue not in dispute, specifically that appellant's pain necessitated his visit to Dr. Bivens on September 4, 2003.

■ The affidavits from former ALJs Daniels and White, which contain assertions that appellant's motion for a continuance was denied because of the Commission's vendetta against him and his counsel, do not establish an abuse of discretion. Neither Daniels nor White is currently serving as an ALJ. Likewise, neither was serving as an ALJ when the hearing in this particular case took place. Finally, no facts were presented in the affidavits that show that either the ALJ or the Commissioners who did take part in this case were under pressure or in any way biased against appellant or his attorney. Accordingly, we affirm on this issue as well.

■ As to the denial of the request for a dismissal without prejudice, the ALJ specifically pointed out that he was unable to locate any court decisions regarding how, if at all, voluntary dismissals pursuant to Ark. R. Civ. P. 41 apply to proceedings before the Commission and stated that pursuant to section 27 of the Arkansas Workers' Compensation Act, codified at Ark. Code Ann. § 11-9-705(a) (Repl. 2002), the Commission has deemed the granting of a motion for a voluntary dismissal as a matter of discretion with the Commission rather than mandatory. Appellant failed to present evidence to demonstrate his assertion that claimants have an absolute right to obtain a dismissal without prejudice, notwithstanding the language in the ALJ's prehearing order stating that the hearing schedules would be changed only for good cause. The ALJ allowed appellant additional time to take Dr. Bivens's deposition, and it was entered into the record. The proffered testimony from the only missing witnesses at the hearing was deemed as having no bearing on the facts that would determine compensability in this action. Because the ALJ determined that all relevant evidence had been presented and all relevant issues developed before him, we hold that there was no error related to this issue.

*(C) Denial of Motion to Remand and File Additional Evidence*

As reflected in the October 7, 2005 order, the Commission was correct in refusing to allow the new evidence contained in the previously discussed six depositions. Generally, all evidence must

be presented at the initial hearing on a claim. Ark. Code Ann. § 11-9-705(c) (Repl. 2002). In order for the Commission to allow the submission of additional evidence, the movant must demonstrate that the new evidence is relevant; that the new evidence is not cumulative; that the new evidence would change the result of the case; and that the movant was diligent in presenting evidence to the Commission. *See Hargis Transp. v. Chesser*, 87 Ark. App. 301, 190 S.W.3d 309 (2004).

■ Appellant failed to demonstrate the evidence's relevancy. The evidence in the depositions related solely to appellant's vague constitutional arguments, which have no bearing on whether his injury was compensable, and the evidence did not suggest that political pressure caused the ALJ in this case to treat appellant's case unfairly. None of the present Commissioners were serving in 1999 or 2000, when the depositions were taken, and the ALJ who handled appellant's case was not associated with the Commission when the former ALJ was terminated in 1998. The depositions concern only the termination of an employee of the Commission. The deposition evidence is simply not relevant to appellant's particular case because appellant did not suffer from the alleged work-related injury until 2003, and further, neither appellant nor his attorney was mentioned in the depositions.

■ In addition, appellant has not demonstrated that the evidence he sought to introduce would have produced a different result. Appellant's constitutional challenges are general and vague, and he does not establish how the alleged transgressions of the Commission affected his particular claim in this case. Also, contrary to his claims otherwise, appellant did not exercise due diligence in obtaining the new evidence. A remand based upon newly discovered evidence is only proper when the new evidence could not have been brought before the Commission through the diligent efforts of appellant. *Neal v. Hanford Produce Co.*, 256 Ark. 1074, 511 S.W.2d 636 (1974). Appellant's counsel was aware of the federal lawsuit even before appellant allegedly sustained an injury in this case; and while appellant may have been unable to produce the actual depositions, the substance of his argument was available for presentation to the ALJ, yet he failed to present it at that time. On these facts, the Commission did not abuse its discretion when it refused to allow appellant to introduce the additional evidence. Accordingly, we affirm on this issue.

*(D) Evidence Regarding Executive Branch of the State of Arkansas and Private Interests Exerting Pressure on the ALJs and the Commission*

Due process requires impartiality on the part of persons performing judicial or quasi-judicial functions. *See Schweiker v. McClure*, 456 U.S. 188 (1982). Hearing officers are presumed to be unbiased; however, the presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification. *Id.* The burden of establishing such a disqualifying interest rests with the party making the assertion, and speculation and conjecture cannot substitute for credible evidence. *See id.; see also Cloverleaf Express v. Fouts*, 91 Ark. App. 4, 207 S.W.3d 576 (2005).

Appellant failed to demonstrate that either the executive branch of the State of Arkansas or various private interests exerted pressure on the ALJ or the Commissioners sitting in this case that infringed upon their decisional independence and resulted in either actual bias or the appearance of bias. Appellant proffered the six previously discussed depositions and also offered the affidavits of former ALJs Daniels and White in an attempt to demonstrate actual bias or, at the very least, the appearance of bias. With respect to the six depositions, his attempt fails because (1) the ALJ involved in this claim was not serving as an ALJ when the depositions were taken; (2) appellant's alleged injury had not occurred at the time the depositions were taken; (3) neither appellant nor his attorney was mentioned in any of the depositions; and (4) the allegations raised in the lawsuit in which the depositions were taken involved only the termination of a former employee of the Commission.

With respect to the affidavits of Daniels and White that were allowed by the Commission, neither establishes that any pressure that may have been exerted by the executive branch of the State of Arkansas or private interests resulted in bias against appellant or his attorney by either the ALJ or the Commissioners in this matter. Moreover, both Daniels and White stated in their respective affidavits that they believed they always decided cases fairly and justly by applying the relevant law to the facts of each case. Neither admitted any bias on his part either for or against legitimate claims of injured workers. Additionally, neither White nor Daniels indicated that he had any personal knowledge of any ALJ being told by anyone associated with the Commission, by then-Governor Mike Huckabee, or by any private individual that he or she must meet a

quota of awards or denials or should otherwise rule for or against any particular party in any particular case.

██ Only the due-process rights, and any violation thereof, concerning the individual parties in this particular case are at issue, and appellant has failed to demonstrate any violation thereof. This court does not address the type of broad, sweeping, and systemic allegations set forth by appellant, as to do so would amount to an advisory opinion. See Dodson v. Allstate Ins. Co., 365 Ark. 458, 231 S.W.3d 711 (2006) (holding that courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct).

### (E) Violation of the Separation-of-Powers Doctrine

██ Appellant argues that an administrative quasi-judicial procedure that does not provide safeguards to protect the decisonal independence of hearing officers violates the separation-of-powers doctrine established by the Constitution of the State of Arkansas. Initially, appellant has failed to demonstrate a violation of the separation-of-powers doctrine on the part of any private interest because it is impossible to do so, as the doctrine deals solely with the relationship of the three branches of government. It places no limits whatsoever on private citizens, and this aspect of appellant's argument will not be addressed.

Regarding the Arkansas Workers' Compensation statutes, Act 796 of 1993, and the workers' compensation system's structure, it is well settled under the law of Arkansas that a statute is presumed to be constitutional and will only be struck down where there is a clear incompatibility between the statute and the state constitution. See McLane So., Inc. v. Davis, 366 Ark. 164, 233 S.W.3d 674 (2006). If it is possible to construe a statute so that it meets the test of constitutionality, this court will do so. Id.

Arkansas's separation of powers provisions are set forth in article 4, sections 1 and 2, of the state constitution:

§ 1. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

§ 2. No person, or collection of persons, belonging to one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Our supreme court has stated that a legislative act violates the doctrine when it deprives the courts of the power to decide a judicial question. *Ball v. Roberts*, 291 Ark. 84, 722 S.W.2d 829 (1987). Appellant has provided no evidence of such deprivation as it relates to the workers' compensation statutes or system, and even the affidavits of former ALJs Daniels and White stop short of claiming that they were ever deprived of the power to decide a judicial question.

 With respect to pressure from the executive branch of the State of Arkansas, we must review the two-pronged test adopted by the Supreme Court in *Mistretta v. United States*, 488 U.S. 361 (1989), to determine if there has been a violation. The first prong sets forth that the judiciary "neither be assigned or allowed tasks that are more properly accomplished by other branches" of the government. *Id.* at 383. No assertion that such a violation has occurred is made in this case. The second prong states a prohibition against any provision of law that "impermissibly threatens the institutional integrity of the [j]udicial [b]ranch." *Id.* In support of the argument that such a violation has occurred in the instant case, appellant offers only the affidavits of Daniels and White who both assert that they felt pressured by the power of the executive branch of the State of Arkansas. Neither of their affidavits contain any factual violations regarding their judicial independence or integrity caused by the executive branch of the State of Arkansas. To the contrary, they both assert that just the opposite was true, claiming that they always decided cases fairly. Because appellant has failed to provide evidence of a violation under the test set forth in *Mistretta*, we must affirm on this point as well.

*(F) External Pressure Exerted by Political and Private Interests on Administrative Decision Makers Violates Due-Process Rights of the Parties Appearing Before the Agency*

Appellant's remaining challenge is to the workers' compensation laws as providing inadequate procedural protection. As such, he bears the burden of establishing a violation of his due-process rights. *See Golden v. Westark Cmty. Coll.*, 333 Ark. 41, 969 S.W.2d 154 (1998).

Administrative agencies, which like the Commission are quasi-judicial, do not, in and of themselves, violate due process. *See Withrow v. Larkin*, 421 U.S. 35 (1975). Additionally, the composition of the Commission does not violate due process. *See Quinn v. Webb Wheel Prods.*, 59 Ark. App. 272, 957 S.W.2d 187 (1997). In *Quinn*, this court adopted the three factors identified by the Supreme Court for determining what type of due process is warranted: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of procedural safeguards; (3) the government's interest, including the fiscal and administrative burdens that additional or substituted procedures would entail. *Id.* Appellant has failed to meet his burden of establishing a violation of his due-process rights under the law, and we affirm the Commission's findings that appellant's due-process rights were adequately protected in this matter.

Affirmed.

BIRD and BAKER, JJ., agree.