2009 Ark. App. 552

**COOPER STANDARD AUTOMOTIVE, INC. and St. Paul Travelers Insurance Co., Appellants,**

v.

**Melanie KELLEY, Appellee.**

**No. CA 09–43.**

Court of Appeals of Arkansas.

Sept. 2, 2009.

Bridges, Young, Matthews & Drake, PLC, by: Michael J. Dennis and John P. Talbot, Pine Bluff, for appellants.

Compton, Prewett, Thomas & Hickey, LLP, by: Floyd M. Thomas, EL Dorado, for appellee.

ROBERT J. GLADWIN, Judge.

Appellants Cooper Standard Automotive, Inc., and St. Paul Travelers Insurance Company appeal the decision of the Workers' Compensation Commission dated September 23, 2008, adopting and affirming the decision of the Administrative Law Judge (ALJ) dated April 4, 2008. Appellants contend that substantial evidence does not support the Commission's determination that cervical-fusion surgery was reasonably necessary in connection with appellee's compensable injury and that the penalty imposed for late payment of benefits was excessive. We affirm.

This claim originated when appellee Melanie Kelley worked for appellant Cooper Standard Automotive as the new job coordinator in its engineering department on February 7, 1999. On that date, appellee sustained a compensable neck and back injury after being hit in the head by a steel-core bar that weighed over four hundred pounds. Ultimately, appellee returned to work for Cooper for some nine months until she was laid off. She also applied for and drew twenty-six weeks of unemployment-insurance benefits. On August 27, 2001, appellee underwent a cervical fusion at C5–6, which was performed by Dr. Richard Jordan, for which benefits were paid.

This claim became the subject of prior hearings that related to appellee's healing period, compensability of her back injury, and her entitlement to a proposed L5/S1 percutaneous diskectomy. In an opinion dated May 7, 2003, the ALJ found that appellee's healing period had not ended and found her back condition to be a compensable injury. At that time, the ALJ awarded appellee temporary-total disability from May 15, 2000, through a date yet to be determined.

On February 23, 2006, a hearing was held in El Dorado, Arkansas, which addressed the following issues:

1) Whether appellee was entitled to additional temporary-total-disability benefits.

2) Whether appellee was entitled to additional permanent-partial-disability benefits.

3) Whether appellee had sustained wage loss in excess of her permanent-anatomical-impairment rating.

4) Enforcement of the Commission's prior orders.

5) Controversion and attorney's fees.

On May 9, 2006, an opinion was issued as a result of the February 23, 2006 hearing. The ALJ found that appellee had reached the end of her healing period on August 4, 2003, and that she was entitled to temporary-total-disability benefits from May 15, 2000, through August 4, 2003. The ALJ also found that appellee sustained permanent impairment of fourteen percent to the body as a whole as a result of her compensable injury and that she had suffered wage loss in the amount of eighty-six percent over and above her permanent-anatomical rating for a total impairment of 100%. An appeal followed the May 9, 2006 opinion, and on March 7, 2007, the Commission affirmed and modified the ALJ's May 2006 order.

The Commission opinion filed March 7, 2007, affirmed the ALJ's finding that appellee had reached maximum-medical improvement on August 4, 2003, and affirmed the determination that appellee had sustained a fourteen-percent permanent impairment to the body as a whole as a result of her February 1999 compensable injury. The Commission, however, modified the ALJ's finding of an eighty-six percent wage-loss disability over and above appellee's permanent-anatomical impairment. The Commission found that appellee was only entitled to wage loss in the amount of twenty-eight percent over and above her permanent-anatomical-impairment rating of fourteen percent to the body as a whole, for a total impairment of forty-two percent.

On March 21, 2007, while the period for appealing the Commission's decision was pending, appellee underwent a second cervical-fusion surgery, this time at the C4–5 level. Dr. Richard Jordan performed the surgery, and he testified that the surgery was an attempt to relieve neck pain, pain and numbness in appellee's left arm, severe muscle spasms, and migraine headaches. He further testified that, in his opinion to a reasonable degree of medical certainty, the cervical-fusion surgery was related to the original injury suffered by appellee in February 1999. Part of his opinion was based upon appellee's improvement after the surgery.

No one appealed the Commission's order filed March 7, 2007. It is also undisputed that the appeal time for that March 7, 2007 order ran on April 9, 2007, and that the award became final fifteen days thereafter on April 24, 2007. The parties agree that on April 30, 2007, approximately six days after the award became final, appellants paid $46,857.07 in indemnity benefits to appellee and $5,085.60 in attorney's fees. Appellee contended that the amounts received on April 30, 2007, were incorrect and late. She requested a finding by the Commission of the correct amount appellants should have paid on or before April 23, 2007, and a determination that she was entitled to a twenty-percent penalty pursuant to Arkansas Code Annotated section 11–9–802(c) (Repl.2002), due to the failure of appellants to timely pay the award outlined in the Commission opinion filed March 7, 2007. The Commission was also asked to determine whether the March 21, 2007 surgery was reasonable and necessary.

The Commission found that appellants did not correctly pay benefits pursuant to the March 7, 2007 Commission order and that they still owed appellee $7,541.74, which included interest, in temporary-to-

tal-disability benefits as of May 9, 2006; that appellants owed $42,346.85 in permanent-partial-disability benefits that was due on or before April 23, 2007; that appellee was entitled to a twenty-percent penalty on the total amount that appellants owed; that appellee's cervical fusion on March 21, 2007, was reasonable, necessary, and related to appellee's February 7, 1999 compensable injury; and that appellee's attorney was entitled to a maximum statutory attorney fee, reserving the issue of unpaid attorney's fees as a result of the May 7, 2003 order. From that order comes this appeal.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Perm. Total Disab. Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *See id.* Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority opinion.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Com-

mission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark.App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Arkansas Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005).

Further, we recognize that the Commission has the duty of weighing the medical evidence as it does any other evidence, and the Commission has the authority to accept or reject medical opinions. *Coleman v. Pro Transp., Inc.*, 97 Ark.App. 338, 249 S.W.3d 149 (2007). When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark.App. 162, 258 S.W.3d 394 (2007). The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict, and this court is powerless to reverse the Commission's decision regard-

ing which medical evidence it chooses to accept when that evidence is conflicting. *Hill v. Baptist Med. Ctr.*, 74 Ark.App. 250, 48 S.W.3d 544 (2001).

### Cervical-fusion surgery

Appellants contend that substantial evidence does not support the Commission's determination that cervical-fusion surgery was reasonably necessary in connection with appellee's compensable injury. Dr. Jordan testified that "before you can have a herniation you have to have a crack in the annulus" and that the compensable incident "very well may have" cracked appellee's annulus. He testified that cracks in the annulus are often not seen on any study except perhaps a discogram. He first thought that appellee might have had a discogram performed by Dr. Thomas Hart. Then he testified, "She had a discogram showing disruption at C5–6. I don't know that [Dr. Hart] tested 4–5. I don't know that." Appellants argue that since Dr. Jordan based his relatedness opinion on the assumption that appellee's compensable incident caused a crack in her annulus at C4–5, it would seem reasonable and worthwhile for him to verify whether Dr. Hart in fact performed a discogram covering C4–5, and if so, what the discogram showed. But he did not inquire as to those details before offering his opinion.

Appellants point out that the discogram that was in fact performed by Dr. Hart in November 1999, nine months after the compensable incident, showed "some very minimal degenerative changes." Appellants contend that the objective medical evidence, the 1999 discogram, showed that appellee did not suffer an annular tear. Appellants claim that the assumption that the compensable injury caused an annular tear at C4–5 made by Dr. Jordan to support his opinion that the ruptured disc first appearing in 2007 was related to a 1999

injury was incorrect. Appellants contend that because the foundation of Dr. Jordan's opinion is incorrect, the conclusion is also incorrect. Trying to bolster Dr. Jordan's opinion, by stating that Dr. Hart testified that he would agree with that opinion when the opinion of Dr. Jordan is based on false assumptions, is circular reasoning. Appellants claim that no substantial evidence supports Dr. Jordan's opinion and that, since the basis of the opinion is that a cracked annulus occurred in 1999 and the discogram test of Dr. Hart performed in 1999 proved that no cracked annulus occurred, the opinion is obviously mistaken and inaccurate and should not have been adopted by the Commission.

Appellee points out that during his deposition testimony, Dr. Hart testified that, if Dr. Jordan is of the opinion that the disc surgery at C4–5 in March 2007 is related to appellee's on-the-job injury, he would agree with Dr. Jordan. Dr. Jordan then testified that he believed that the disc herniation that he operated on in March 2007 was in his strong opinion part of the original injury that appellee suffered back in February 1999. Dr. Jordan stated that it was his opinion to a reasonable degree of medical certainty that the cervical fusion at C4–5 on March 21, 2007, was related to the injury of February 1999. He thought the March 2007 surgery was reasonable and necessary. He stated that appellee's improvement would back up his belief that the treatment was reasonable and necessary. Further, objective medical evidence of minimal degenerative changes were shown by the discogram performed in November 1999 at the C4–5 level. Therefore, fair-minded persons with these facts before them could reach the conclusion of the Commission. Accordingly, we hold that substantial evidence supports the Commission's opinion.

*Penalty for late payment*

 Appellants argue that the penalty of $9,977.72, imposed by the Commission for late payment of benefits, constitutes an excessive fine. Appellants contend that, to the extent Arkansas Code Annotated section 11–9–802(c) required the Commission to impose a penalty in that amount, it violates constitutional standards, and it should be treated as inoperative or inapplicable. However, because appellants failed to raise the constitutionality of the penalty before the ALJ, they have waived their right to assert the unconstitutionality argument. *See Finley v. Farm Cat, Inc.,* 103 Ark.App. 292, 288 S.W.3d 685 (2008); *Green v. Smith & Scott Logging,* 54 Ark. App. 53, 922 S.W.2d 746 (1996).

Affirmed.

HENRY and BAKER, JJ., agree.