2009 Ark. App. 717
**UNITED FARMS, INC. and Ag–Comp SIF, Appellants**

v.

**Jessie GIST, Appellee.**

**No. CA 09–442.**

Court of Appeals of Arkansas.

Oct. 28, 2009.

Rehearing Denied Dec. 9, 2009.

Neal Lawrence Hart, Little Rock, for appellant.

Michael Scott Willhite, Jonesboro, for appellee.

WAYMOND M. BROWN, Judge.

On February 27, 2009, the Workers' Compensation Commission found that Jessie Gist suffered a compensable injury, that he was entitled to five-percent permanent impairment, and that he was temporarily totally disabled from March 29 through July 28, 2007. Gist's employer, United Farms, Inc., and its carrier, Ag–Comp SIF (collectively "United Farms"), appeal from that decision. First, they argue that the record lacks objective findings or causal evidence sufficient to justify the award. Second, they contend that the award of temporary-total disability was improper in light of Gist's unjustified refusal to accept light-duty work. We affirm.

*Factual and Procedural History*

Gist worked for United Farms as a fish-truck driver. He alleged that he suffered a compensable injury on March 28, 2007, when he slipped and fell on some wet steps. Later that day, he presented to the Crittenden Regional Hospital emergency room, where he was initially diagnosed with lumbar strain. An x-ray of the lumbar spine taken that day showed normal alignment, vertebral bodies, and intervertebral discs. At a follow-up appointment at the Lee County Cooperative Clinic, a doctor assessed a back and kidney contusion with musculoskeletal strain.

Gist presented to United Farms's workers' compensation doctor, Trent Pierce, on April 19, 2007. Dr. Pierce noted tenderness along Gist's paraspinous muscles on the right side of the lumbar and thoracic spine. The doctor reviewed the previous x-ray and saw an old vertebral fracture at L1, but he did not believe that Gist suffered an acute injury. Dr. Pierce kept

Gist off work until April 30, 2007. On May 9, 2007, Gist submitted to an MRI, which showed a very minimal diffuse bulge at L4–5 and L5–S1 and bilateral degenerative facet arthropathy at all lumbar levels. Like the previous x-ray, the MRI showed a normal L1–2 and L2–3. On May 14, 2007, Dr. Pierce released Gist to regular duty with a twenty-pound lifting restriction.

Gist presented to Dr. Jerry Engelberg for the first time on June 22, 2007. Dr. Engelberg reviewed the previous x-ray and MRI and saw the old compression fracture at L1. Dr. Engelberg ordered a bone scan on June 29, 2007, which showed an "enlargement of what appears to be the right side of the L2 transverse process." The radiologist stated that the finding could be either a "normal variant" or a "pathologic lesion or subtle fracture." On July 3, 2007, Gist submitted to a CT scan of his lumbar spine, which revealed a right L2 transverse-process fracture. It also showed an unrelated L1 vertebral-body superior-endplate-compression deformity. The radiologist, James Acker, described both of these injuries as "remote."

In correspondence to Gist's attorney, Dr. Engelberg confirmed that Gist had suffered a transverse-process fracture on his right L2, which "appeared to be reasonably recent." In a separate letter, he assessed a five-percent permanent-impairment rating to the whole person. The parties took Dr. Engelberg's deposition on May 20, 2008. During that deposition, he stated that it was difficult to determine the age of the fractures at L1 and L2 and that he would defer to the radiologist as far as the age of those fractures. He also stated that he did not know what Dr. Acker meant when he wrote that both the L1 and L2 fractures were "remote." However, he was able to state that transverse-process fractures are rare and that they are almost always caused by trauma. He held to his

opinion that the fracture at L2 was a result of the March 28, 2007 fall. Dr. Engelberg was also asked about maximum-medical improvement. He reviewed Dr. Pierce's notes, which included Dr. Pierce's opinion that Gist could return to light-duty work near the end of April. Dr. Engelberg disagreed. He stated that a patient with a transverse-process fracture would need approximately three to four months before reaching maximum-medical improvement. He also held to the five-percent permanent-impairment rating that he had assigned to Gist and stated that he had assigned that rating without taking into account pain or range of motion.

There was also testimony regarding Gist's attempts to return to work after the accident. Gist testified that he tried to return to work while being treated by Dr. Pierce. He stated that he did not want to drive motor vehicles due to the medications he was taking. He tried to perform light-duty work in the form of shooting the cranes in the area, but that work still caused him pain. On another occasion, Gist was under a truck fixing a light. When he came out from under the truck, he felt as if someone had stabbed him in the back. Gist told the ALJ that on the days when he tried to work, Payton Upton, the company's owner, would send him home. Gist opined that, after the accident, he could no longer do his job.

Jessie Morgan also worked at United Farms. He witnessed the fall and acknowledged that Gist had no problems driving prior to the accident. Morgan testified that he wanted to get Gist off workers' compensation as quickly as possible and that he would have allowed Gist to do nothing for forty hours a week in order to do so. Morgan said that, after the accident, he asked Gist to clean his truck and run the cranes off the premises with his truck. Morgan stated that he sent Gist home only on a few occasions. The other times, he would assign Gist a task; Gist would attempt it, then say that he could not do it and go home.

United Farms initially paid benefits, but it controverted Gist's claim in its entirety after hiring an investigator to conduct surveillance in May and August 2007. While this evidence demonstrated that Gist may have been exaggerating his overall disability, the ALJ found the surveillance evidence to be of little value. The ALJ also wrote that counsel for United Farms "did a masterful job on cross-examination to show that [Gist] was an untruthful witness." Nonetheless, he found that Gist had proved the existence of a compensable injury and that he was entitled to a five-percent permanent-impairment rating and temporary-total disability from March 29 through July 28, 2007. The ALJ also rejected United Farms's argument that Gist rejected suitable employment, relying on the testimony that Gist had indeed attempted to do work, but that his supervisor sent him home. The Commission affirmed and adopted the opinion of the ALJ.

### Standard of Review

In reviewing decisions from the Workers' Compensation Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms if that decision is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the reviewing court might have reached a different result from that of the Commission; if reasonable minds could

reach the result found by the Commission, we must affirm the decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94; 989 S.W.2d 151 (1999).

### Compensability and Permanent Impairment

United Farms challenges the Commission's finding that Gist suffered a compensable injury and that he was entitled to a five-percent permanent impairment rating. It argues that the record contains no objective medical evidence and that Dr. Engelberg's assessment was improper.

Contrary to United Farms's assertion, the record does contain objective medical findings sufficient to establish compensability. A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11–9–102(4)(D) (Supp.2009). Objective findings are those that cannot come under the voluntary control of the patient. Ark.Code Ann. § 11–9–102(16)(A)(i). While objective findings are necessary to establish the existence and extent of an injury, they are not essential to establish the causal relationship between the injury and the work-related accident. *Wal–Mart Stores, Inc. v. Van-Wagner*, 337 Ark. 443, 990 S.W.2d 522 (1999). In this case, the objective finding of a transverse-process fracture at L2 can be found in the bone scan taken in June 2007 and the MRI taken in July 2007. United Farms relies on the previous studies that did not reveal a fracture. This may be evidence supporting a finding that the fracture was not compensable, but the bone scan and the MRI are enough to meet the substantial-evidence standard.

United Farms is also incorrect in stating that the Commission improperly relied on Dr. Engelberg's opinion. The Commission has the duty of weighing the medical evidence as it does any other evidence, and the Commission has the authority to accept or reject medical opinions. *Cooper Standard Auto., Inc. v. Kelley*, 2009 Ark. App. 552, 337 S.W.3d 542. When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Id.* The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict, and we are powerless to reverse the Commission's decision regarding which medical evidence it chooses to accept when that evidence is conflicting. *Id.* In this case, Dr. Engelberg opined that the transverse-process fracture was a result of Gist's fall. United Farms relies on Dr. Engelberg's deference to Dr. Acker's opinion; however, Dr. Engelberg never backed away from his opinion that Gist's injury was caused by the accident. Dr. Engelberg also held to his assessment of a five-percent permanent-impairment rating. United Farms claimed that the rating was improperly based on subjective complaints of pain, but Dr. Engelberg's testimony does not support this claim:

> I did give Mr. Gist a rating on April 14th, 2008. When I assigned that, I used the Fourth Edition of the A.M.A. Guides.... This rating was strictly based on the A.M.A. Guidelines. I did not take into account pain. I also didn't take into account the range of motion. The only thing I took into account, I went to the A.M.A. Guidelines and spent some time, looked up and saw a transverse process fracture, what they assigned to that. As far as the pain and suffering, I leave that to the courts to make a decision there. I didn't use any kind of pain or subjective complaints when I did the rating.

Thus, the Commission did not err in finding that Gist proved compensability or

in relying on Dr. Engelberg's impairment rating. We affirm on this point.

### Temporary–Total Disability

Next, United Farms argues that the Commission erred in awarding temporary-total disability. It relies on the Commission's finding that Gist was not credible as well as its assertion that Gist refused light-duty work.

When an injured employee is totally incapacitated from earning wages and remains within his healing period, he is entitled to temporary-total disability. *Searcy Indus. Laundry, Inc. v. Ferren,* 92 Ark. App. 65, 211 S.W.3d 11 (2005). Even if a claimant is still within his healing period, the Commission should deny benefits if the claimant has not suffered a total incapacity to earn wages. *Johnson v. Rapid Die & Molding,* 46 Ark. App. 244, 878 S.W.2d 790 (1994). If, during the period while the body is healing, the employee is unable to perform remunerative labor with reasonable consistency and without pain and discomfort, his temporary disability is deemed total. *Farmers Coop. v. Biles,* 77 Ark. App. 1, 69 S.W.3d 899 (2002).

The substantial-evidence standard requires us to affirm. With respect to the length of temporary-total disability, Dr. Engelberg testified that Gist should have had three to four months to recover from his injury. He explicitly disagreed with Dr. Pierce's returning Gist to work in late April 2007. Giving Dr. Engelberg's testimony its maximum effect, as the substantial-evidence standard requires us to do, this would place Gist at the end of his healing period no later than July 28, 2007.

As for United Farms's argument regarding rejection of suitable work, the company states the law correctly. If an injured employee refuses suitable employ-ment, he is not entitled to any compensation during the continuance of the refusal unless the refusal is justifiable. Ark.Code Ann. § 11–9–526 (Repl.2002). However, there was evidence showing this not to be the case. Gist stated that he attempted to do the work, but was sent home by Upton. Morgan stated that Gist would attempt the work, but would go home after attempting to do the work without success. Further, while Morgan testified that he would allow Gist to sit at a desk and collect a paycheck, there is nothing in the record actually showing that this was offered to Gist. If Gist's testimony is accepted, he never refused suitable work. If Morgan's testimony is accepted, then at best any refusal to do the work was justifiable given Gist's inability to do the work.

Substantial evidence supports the Commission's award of temporary total-disability benefits. We affirm on this point as well.

Affirmed.

GRUBER and BAKER, JJ., agree.