2011 Ark. App. 665

**Melanie KELLEY, Appellant**

v.

**COOPER STANDARD AUTOMOTIVE, INC., and St. Paul Travelers Insurance Co., Appellees.**

**No. CA 11–391.**

Court of Appeals of Arkansas.

Nov. 2, 2011.

Floyd Mattison Thomas, Jr., El Dorado, for appellant.

Michael J. Dennis, Pine Bluff, for appellee.

DOUG MARTIN, Judge.

Appellant Melanie Kelley appeals the decision of the Workers' Compensation Commission finding that Kelley failed to prove that she was permanently and totally disabled and that she was entitled to additional wage-loss disability benefits. We find no error and affirm.

Kelley went to work for appellee Cooper Standard Automotive ("Cooper") as a laboratory technician in 1995. By 1999, Kelley was working as Cooper's new-job coordinator in its engineering department. On February 7, 1999, Kelley sustained compensable neck and back injuries when a 400–pound steel bar hit her on the top of her head. Kelley went back to work for Cooper after her injuries, but she was laid off in November 1999. Thereafter, she applied for and received twenty-six weeks of unemployment insurance benefits.

On August 27, 2001, Dr. Richard Jordan performed a cervical fusion on Kelley at C5–6. Benefits were paid on this claim, but the claim became the subject of hearings related to Kelley's healing period, the compensability of her back injury, and her entitlement to additional surgery. On May 7, 2003, an Administrative Law Judge (ALJ) determined that Kelley's healing period had not ended and found her back injury to be a compensable injury. At that time, the ALJ awarded Kelley temporary total disability (TTD) benefits from May 15, 2000, through a date yet to be determined.

A subsequent hearing was held before an ALJ on February 23, 2006. In an opinion issued on May 9, 2006, the ALJ found that Kelley had reached the end of her healing period on August 4, 2003, and

that she was entitled to TTD benefits from May 14, 2000, through August 4, 2003. The ALJ also found that Kelley sustained a permanent impairment of 14% to her body as a whole as a result of her compensable injury and that she had suffered wage loss in the amount of 86% over and above her permanent-anatomical rating, for a total impairment of 100%.

An appeal followed the ALJ's decision, and in an opinion filed on March 7, 2007, the Commission affirmed the ALJ's finding that Kelley had reached maximum medical improvement on August 4, 2003, and that she had sustained a 14% permanent impairment to her body as a whole as a result of the February 1999 injury. The Commission disagreed with the ALJ, however, that Kelley was entitled to an 86% wage-loss disability, and it found that she was only entitled to wage loss in the amount of 28% over and above her permanent anatomical-impairment rating of 14% to the body as a whole, for a total impairment of 42%. In so doing, the Commission wrote as follows:

> While we recognize that Dr. Jordan has opined that [Kelley] is not capable of returning to work, we do not think any weight should be attached to this opinion given all of the evidence to the contrary. In addition to this, Dr. Jordan has not cited any physical condition or limitations that would prevent [Kelley] from returning to work at a sedentary level. [Kelley] admitted that she has not sought work after being laid off by [Cooper] in November of 1999. Moreover, there is no probative evidence before the Commission demonstrating that [Kelley] is precluded from returning to gainful employment as an industrial lab technician or other suitable work. [Kelley] now draws Social Security Disability benefits. The Full Commission finds that [Kelley's] lack of motivation in pursuing work as a lab technician or other suitable work substantially impedes our assessment of [Kelley's] loss of earning capacity. Therefore, based on [Kelley's] age, education, work experience, anatomical impairment rating of 14% to the body as a whole, her lack of motivation to return to work as a lab technician or other suitable work, and considering she has no physical condition or limitations that would prevent her from working at a sedentary level, the Full Commission finds that [Kelley] has failed to prove by a preponderance of the evidence that she has suffered wage-loss disability in the amount of 86%, thereby rendering her permanently and totally disabled.

No appeal was taken from the March 7, 2007 decision.

Following the Commission's decision, Kelley underwent another back surgery on March 21, 2007. This surgery became an issue before the ALJ at a hearing on January 8, 2008, at which time Cooper contested whether the surgery was reasonable, necessary, and related to the February 7, 1999 compensable injury. The ALJ found that the surgery was related to the injury, and that decision was affirmed and adopted by the Commission. This court, in turn, affirmed the Commission. *Cooper Standard Automotive, Inc. v. Kelley*, 2009 Ark.App. 552, 337 S.W.3d 542.[1]

After this court's 2009 opinion, Kelley sought additional benefits, claiming that she was permanently and totally disabled or, alternatively, that she was entitled to wage-loss disability benefits. Kelley also sought a determination that she was entitled to a finding of additional permanent partial anatomical impairment due to the March 21, 2007 surgery.[2]

---

1. The parties have stipulated that this opinion is *res judicata* and law of the case.

2. Cooper stipulated that Kelley was entitled to temporary total disability benefits from March 21, 2007 through March 21, 2008. The par-

A hearing on these issues was held before the ALJ on April 13, 2010. Kelley testified that, although Dr. Jordan found that she had reached maximum medical improvement in March 2008, she would not say that she had gotten any better since the March 2007 surgery. Kelley complained that she had migraine headaches four or five days a week and was taking numerous pain killers: oxycodone four times a day; carisoprodol, a generic version of the muscle relaxant Soma, four times a day; amitriptyline to help her sleep; and two tablets of methadone three times a day. Kelley also testified that she received pain-management treatments, including nerve blocks from Dr. Cubbie in Little Rock.

Kelley stated that her parents operate a private school and daycare, and she said that her parents would "love for" her to work there if she were able. Kelley explained, however, that she was unable to work either at the daycare or at some other sedentary job because of both her pain and the pain medication she was taking. Although Kelley complained that she was generally unable to find any position that relieved her pain for any length of time, she admitted that she was capable of driving on occasion.

On cross-examination, Kelley conceded that she felt somewhat better after the March 2007 neck surgery, noting that the frequency of her headaches had decreased and stating that she could "say that it was worth having done." Kelley also acknowledged that she had been very close to earning an engineering degree prior to the injury and that she had not checked to see whether there might be some "internet course work" that would allow her to complete her degree. Kelley further agreed that she had not applied for any jobs anywhere since 2006, although she said "[I]f I could, I would."

Following the hearing, the ALJ issued an opinion on July 9, 2010. In that opinion, the ALJ found that Kelley was entitled to an additional anatomical impairment of 3% to the body as a whole, based on Dr. Jordan's assessment. The ALJ disagreed, however, that Kelley was now permanently and totally disabled or entitled to wage-loss disability benefits. Noting that the Commission had previously determined that Kelley had a total impairment of 42%, the ALJ concluded that

the only significant change affecting [Kelley's] entitlement to permanent and total disability or wage loss was [her] March 21, 2007 surgery. Even though [Kelley] did receive an extra 3% anatomical impairment, [Kelley] testified that her functional ability actually *improved.*

Q: And we do have the medical reports and things like that. I'm asking about Melanie Kelley, does Melanie Kelley feel better today than she did ten days before that operation?

A: I would say a seven-day-a-week headache went to a five-day-a-week headache, how's that?

Q: Okay, so you're better, some better?

A: As far as that goes.

Q: I know you're not a hundred percent better, but it improved your condition somewhat, that operation, it was worth having?

A: Yes, it was worth having done, I can say that.

I find that [Kelley's] condition has actually improved since the last adjudication regarding permanent and total disability benefits and/or wage loss. When taking all the factors into consideration when considering a claim for permanent and total disability benefits, I

ties also stipulated that Kelley's healing period ended on March 21, 2008.

find that [Kelley] has failed to prove by a preponderance of the evidence that she is now permanently and totally disabled. For the same reasons outlined above, I also find that [Kelley] has failed to prove by a preponderance of the evidence that she is entitled to any additional wage loss disability benefits.

Kelley appealed the ALJ's decision, and the Commission entered a 2–1 order on February 3, 2011, affirming the ALJ. In so doing, the Commission noted that Kelley was only forty-two years old and had a high school diploma as well as some college education. The Commission also noted Kelley's testimony that she was able to drive. The Commission found that Kelley failed to demonstrate that she had suffered a change in physical condition sufficient to increase her 28% wage-loss award. The Commission also found that the evidence did not show that Kelley's claim to be reliant on medication was a bar to suitable employment. Noting that Kelley had not worked since 2000, the Commission concluded that "this intelligent 42–year–old claimant with some college education is still not interested in returning to work or motivated to seek any employment within her physical restrictions." Accordingly, the Commission affirmed the ALJ's finding that Kelley did not prove that she was permanently and totally disabled or that she was entitled to additional wage-loss disability. Kelley filed a timely notice of appeal from the Commission's decision, and she now argues on appeal that the Commission's decision was not supported by substantial evidence.

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Sivixay v. Danaher Tool Group*, 2009 Ark.App. 786, 359 S.W.3d 433. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based upon wage-loss factors. *Id.* The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. *Id.; see* Ark.Code Ann. § 11–9–522(b)(1) (Repl.2002). Permanent total disability is the inability, because of compensable injury, to earn any meaningful wages in the same or other employment. *See* Ark.Code Ann. § 11–9–519(e)(1) (Repl. 2002).

The injured party bears the burden of proof in establishing entitlement to benefits under the Workers' Compensation Act and must sustain that burden by a preponderance of the evidence. *Dearman v. Deltic Timber Corp.*, 2010 Ark.App. 87, 377 S.W.3d 301. It is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Stone v. Dollar Gen. Stores*, 91 Ark.App. 260, 209 S.W.3d 445 (2005). The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark.App. 97, 289 S.W.3d 163 (2008). The evidence is viewed in the light most favorable to the Commission's decision, and the decision will be affirmed when it is supported by substantial evidence. *Ester v. Nat'l Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998). Substantial evidence exists if fair-minded persons could reach the same conclusion when considering the same facts. *Id.* Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief.

*Frances v. Gaylord Container Corp.,* 341 Ark. 527, 20 S.W.3d 280 (2000).

According to Arkansas Code Annotated section 11–9–713(a)(2) (Repl. 2002), the Workers' Compensation Commission may review any compensation order, award, or decision upon the application of any party in interest, on the ground of a change in physical condition. Further, pursuant to Arkansas Code Annotated section 11–9–522(b)(1) (Repl.2002),₈ the Commission has the authority to increase a claimant's disability rating when a claimant has been assigned an anatomical-impairment rating to the body as a whole. *See Barnett v. Douglas Tobacco,* 2009 Ark.App. 193, 2009 WL 700783; *Lee v. Alcoa Extrusion, Inc.,* 89 Ark.App. 228, 201 S.W.3d 449 (2005).

█ Kelley argues on appeal that the Commission's findings that she had not demonstrated a change in condition and was not permanently and totally disabled were not supported by substantial evidence. She complains that the Commission improperly considered her testimony that she has had less pain since the 2007 surgery, and, while she concedes that complaints of pain cannot be considered in determining wage loss, she argues that "the use of narcotic pain medications can be considered in determining wage-loss disability." In support of this contention, she cites *Whitlatch v. Southland Land & Development,* 84 Ark.App. 399, 141 S.W.3d 916 (2004). We find that case to be distinguishable, however. There, the claimant's treating physicians specifically found that the claimant was disabled as a result of a combination of his physical impairments and his narcotic usage.[3] *Whitlatch,* 84 Ark.App. at 403, 141 S.W.3d at 919. Despite that finding, the Commission determined that Whitlatch was not permanently and totally disabled. *Id.* at 405, 141 S.W.3d at 921.

On appeal, this court analyzed the wage-loss factors in section 11–9–522(b)(1) and considered the claimant's need for pain medication along with his limited education, manual-labor employment skills, severe ongoing pain, the side effects of his prescription pain medication, and the testimony of his doctors and vocational experts, and the court found that ₉reasonable minds could not reach the same decision as the Commission had reached. *Id.* at 406, 141 S.W.3d at 921.

In the present case, however, we conclude that reasonable minds *could* reach the same decision the Commission reached. In so doing, we find this case to be very similar to *Martin v. Jensen Construction Co.,* 2010 Ark.App. 294, 374 S.W.3d 774. In *Martin,* this court affirmed the Commission's findings that appellant Martin was not permanently and totally disabled and that he had failed to prove entitlement to additional wage-loss disability beyond that which had previously been awarded. Martin sustained a compensable injury to his neck in September 1999 and subsequently underwent two surgeries. His employer, Jensen Construction Co., controverted benefits after the second surgery, and in 2005, the Commission ultimately awarded Martin a 25% wage-loss disability beyond his 15% anatomical impairment and found that he had proven entitlement to additional medical treatment, including the two neck surgeries. The Commission, however, rejected Martin's claims to have sustained a lumbar injury. Neither Martin nor Jensen appealed the Commission's decision to this court. *Martin,* 2010 Ark.App. 294, at 1–2, 374 S.W.3d at 775–76.

Martin underwent another cervical-spine surgery in 2006 and claimed additional benefits, asserting that his physical condition had worsened since the 2005 Commission decision. An ALJ found that Martin

---

3. The record reveals no such medical testimony or evidence in the present case.

failed to prove that he was permanently disabled or entitled to additional wage loss beyond the 2005 award, and the Commission affirmed. *Id.* at 2, 374 S.W.3d at 775–76.

In affirming the Commission, this court noted evidence before the Commission that Martin had undergone three surgeries as a result of a compensable neck injury, and after the third surgery, Martin's doctors reported that he had experienced significant improvements. Martin himself testified that the third surgery helped, but the pain intensified afterward and he was still taking pain medication. Martin also testified, however, that his neck felt better after the third surgery and conceded that he had told his doctor that he was very happy about the surgery. *Id.* at 4–5, 374 S.W.3d at 776–77. Martin complained of continuing low back pain, tiredness and weakness, and pain in other parts of his body. *Id.* One of Martin's doctors, Dr. Buono, opined that the 2006 surgery was successful, but Martin was nonetheless permanently and totally impaired and unable to return to work because of neuropathy, chronic pain, and other ailments. *Id.* at 5–6, 374 S.W.3d at 776–77. Dr. Michaels, who performed an impairment rating in April 2007, also opined that Martin was permanently and totally disabled. *Id.* at 6, 374 S.W.3d at 777.

Despite these opinions, this court affirmed the Commission's decision, noting that the Commission found that "the only change in physical condition" related to Martin's compensable cervical injuries was the fact that his cervical problems had "dramatically *improved*" following his third cervical surgery. *Id.* at 6–7, 374 S.W.3d at 777–78 (emphasis in original). This court concluded as follows:

> We find that the Commission's opinion displays a substantial basis for denying Martin's claims for permanent total disability or additional wage-loss benefits.

The question before us is not whether the evidence would have supported findings contrary to those of the Workers' Compensation Commission; rather, the decision of the Commission must be affirmed if reasonable minds might have reached the same conclusion. *Caffey v. Sanyo Mfg. Corp.*, 85 Ark.App. 342, 154 S.W.3d 274 (2004). We are unable to say that reasonable minds could not reach this result, and we therefore affirm.

*Id.* at 7, 374 S.W.3d at 778.

Similarly, in the present case, although Kelley testified that she was still in pain after the March 2007 surgery, she acknowledged that her symptoms had improved since that time. Dr. Jordan's correspondence with Kelley's attorney noted that Kelley's blurred vision had improved and stated that she had reached maximum medical improvement on March 21, 2008, and he refused to speculate whether Kelley's impairment rating would increase. In her arguments on appeal, Kelley's chief complaints are of her ongoing pain, but it is well settled that, when determining physical or anatomical impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain. Ark. Code Ann. § 11–9–102(16)(A)(ii)(a) (Repl. 2002). Because the evidence supports the Commission's conclusion that Kelley's condition had improved somewhat since her 2007 surgery, we hold that reasonable minds could reach the same decision the Commission reached, and we affirm.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.