Cite as 2025 Ark. App. 358

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-567

ROGER GRUBBS

APPELLANT

V.

SOUTHERN PERSONNEL
MANAGEMENT, INC., D/B/A
CABINET SHOP, INC.; AND AMTRUST
NORTH AMERICA, TPA CARRIER

APPELLEES

Opinion Delivered June 4, 2025

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G506221]

AFFIRMED

**BART F. VIRDEN, Judge**

Appellant Roger Grubbs appeals from the Arkansas Workers' Compensation Commission's decision that he did not prove entitlement to surgery recommended by his treating physician and an award of temporary total-disability (TTD) benefits. With respect to medical treatment, Grubbs argues on appeal that a reasonable person could not reach the same conclusion as the Commission and that the Commission misinterpreted medical evidence and gave undue weight to its previous decision. Grubbs also contends that he is entitled to TTD benefits because he is still within his healing period given his treating physician's opinion that he is disabled and cannot work until he receives the recommended treatment. We affirm the Commission's decision.

## I. *Background*

Grubbs began performing cabinetry work for appellee employer Southern Personnel Management, Inc., d/b/a Cabinet Shop, Inc., in 1975. Grubbs sustained a compensable injury to his cervical and thoracic spine in March 2013 when he was involved in a motor vehicle accident (MVA). He received conservative treatment and returned to restricted-duty work. In June 2015, Grubbs reached maximum medical improvement (MMI) "from a neurosurgical standpoint."[1]

On August 7, 2015, Grubbs was involved in another MVA. The employer initially accepted the injury as compensable and paid some TTD benefits. Dr. Gregory Loyd assessed "acute exacerbation of degenerative arthritis of the cervical, thoracic and lumbar spines related to recent MVA." Dr. Steven Cathey wrote on August 31, 2015, that Grubbs's diagnosis was degenerative disc disease affecting the cervical, thoracic, and lumbar spine. He wrote, "[Grubbs] probably did suffer a thoracic strain superimposed on these pre-existing conditions. Unfortunately, he is not a candidate for spinal surgery or other neurosurgical intervention." Dr. Cathey also opined that Grubbs had reached MMI. Grubbs was told that he could return to regular-duty work.

In November 2016, Grubbs began seeing Dr. James B. Blankenship, his treating physician for lower back pain. Dr. Blankenship noted the two prior MVAs and that Grubbs

---

[1]In an opinion filed February 13, 2019, an administrative law judge (ALJ) determined that Grubbs had sustained wage loss in an amount equal to a 15% impairment and in addition to the 5% assigned for the anatomical impairment rating to the body as a whole.

had been previously treated with injections and physical therapy. Dr. Blankenship's impression was low back pain; fibromyalgia; pain in the thoracic spine; and cervicalgia. In February 2017, Grubbs followed up with Dr. Blankenship, and new diagnostic testing showed abnormalities of the lumbosacral spine. Dr. Blankenship recommended that Grubbs see Dr. David Cannon for evaluation and a steroid injection. He also recommended an aggressive, active physical-therapy course.

When Grubbs sought TTD benefits from February 9, 2017, to a date yet to be determined and additional medical treatment by or at the direction of Dr. Blankenship to include, but not limited to, physical therapy and pain management, his employer controverted the claim. An ALJ determined that Grubbs had proved that he sustained a compensable injury on August 7, 2015, and was entitled to additional medical treatment as recommended by Dr. Blankenship and that he was entitled to TTD benefits. Both parties appealed.

In an opinion dated October 1, 2018, the Commission found that Grubbs proved a compensable injury to his neck and back on August 7, 2015, and that Dr. Blankenship's current treatment recommendations were reasonably necessary in connection with that injury. The Commission found that Grubbs was entitled to conservative medical treatment as recommended by Dr. Blankenship; that Grubbs had reached the end of his healing period no later than August 31, 2015; and that he did not prove entitlement to TTD benefits beginning September 30, 2015, or any time thereafter. Neither party appealed from the Commission's opinion.

In April 2019, Grubbs followed up with Dr. Blankenship, who recommended physical therapy and encouraged Grubbs to see Dr. Cannon for injections. In April 2020, Dr. Blankenship performed a lumbar arthrodesis. Later that month, Dr. Blankenship reported that Grubbs was pleased overall with the surgical outcome.

In July 2020, Dr. Blankenship noted that Grubbs was having pain in his low back and that it was "a different type of pain." In October, at the six-month follow-up visit, Dr. Blankenship noted that Grubbs was "doing great with complete resolution of his preoperative pain" but that he "still has some low back pain mostly midline." Dr. Blankenship reported that he thought that Grubbs was at MMI from the standpoint of his lumbar-fusion surgery but that he had advised Grubbs that he could not return to his cabinetry job and that he would have permanent restrictions. He recommended that Grubbs retire. Dr. Blankenship assigned a 12% whole-body impairment rating, which was accepted by the appellee employer, and the parties stipulated that Grubbs reached MMI from the April surgery on October 22, 2020. A functional capacity evaluation on November 11, 2020, showed that Grubbs could perform light-duty work.

In April 2021, Grubbs had an injection by Dr. Cannon for his neck and back pain, and Dr. Blankenship reported on May 6 that it had afforded him about two weeks of 50% relief. Dr. Blankenship noted that Grubbs had had twelve physical-therapy visits that had seemed to help with his pain. He noted that Grubbs complained of mid- and low-back pain on his left side and reported decreased strength in his left lower extremity. Dr. Blankenship

noted that sacroiliac (SI) joint pain is not uncommon after lumbar arthrodesis. He recommended additional treatment with Dr. Cannon—specifically, a left SI joint injection.

On June 10, an ALJ determined that Grubbs was entitled to permanent partial-disability benefits in an amount equal to 30% to the body as a whole resulting from the August 7, 2015 compensable injury. The parties also stipulated that "the prior opinions in this matter are final."

Grubbs had an injection by Dr. Cannon in early August 2021, and Dr. Blankenship reported that Grubbs had gotten 70% relief but was still having some low back pain. In September, Dr. Blankenship reported that Grubbs's low back pain and left buttock pain had gotten significantly worse and that he was offered a left SI joint arthrodesis. Dr. Blankenship wrote, "Not that there is any question about it, his need for SI joint arthrodesis is directly related because of his lumbar stabilization. His lumbar stabilization was needed because of his work-related injury. Therefore it is directly related to his work-related injury."

On December 1, appellee employer sent Grubbs to see Dr. Frank J. Tomecek for an independent medical examination (IME). Dr. Tomecek wrote, "In regard to causation of his current injury, I don't believe we have definitively established a diagnosis yet." He wrote that the findings were consistent with left-sided sacroiliitis but were also consistent with pseudoarthrosis or malpositioned hardware or adjacent level disk herniation. Dr. Tomecek noted, "Unfortunately, [Grubbs] did not get significant improvement with his lumbar fusion." He felt that further diagnostic testing was necessary and recommended a myelogram CT scan.

Grubbs had a myelogram and post-myelogram CT scan of his thoracic and lumbar spine, and in a January 17, 2022 follow-up visit, Dr. Tomecek noted a very large osteophyte, or bone spur, on the left at the top of the SI joint that extended from the SI joint into the pelvis and retroperitoneal area. Dr. Tomecek also concluded that the left SI joint appeared to be autofused. He wrote that he disagreed with Dr. Blankenship's recommendation for an SI joint fusion because of the autofusion already there. He called it "a very high-risk procedure for vascular or other organ injury in the face of previous surgery." He wrote that he did not recommend surgical intervention but that he did recommend nonsurgical inventions, including physical therapy and injections.

On February 21, Grubbs saw Dr. Blankenship, who reported that Grubbs told him that "his SI joint pain is completely resolved." He told Grubbs that he would see him in one year for a follow-up visit and reported that Grubbs was at surgical MMI. Dr. Blankenship, however, arranged for Grubbs to have an MRI on August 2, but there were no significant findings. Dr. Blankenship stated that the MRI, in fact, "looked good." Dr. Blankenship noted, however, on September 12 that Grubbs's pain had gotten significantly worse and that he was again complaining of low-back pain. He recommended that Grubbs have another SI joint injection with Dr. Cannon, which Grubbs had on November 3. Dr. Blankenship wrote in a December 8 report that the injection helped for about a week but that Grubbs's pain had returned. He noted that he went over the risks and benefits of an SI joint arthrodesis and that Grubbs wanted to proceed.

In progress notes dated May 4, 2023, Dr. Tomecek reported that he had reviewed Grubbs's August 2022 MRI and stated that "the status of the patient's fusion is impossible to assess on this MRI." He wrote, however, that there was nothing on the MRI that changed his opinion given on January 17, 2022. Dr. Tomecek repeated his concern that Grubbs had pseudoarthrosis. He wrote that he "totally" disagreed with Dr. Blankenship's treatment recommendation, i.e., SI joint fusion, noting again that the joint was already fused. Dr. Tomecek opined that

> [u]nder the circumstances I would never recommend a SI joint fusion. In other words, in the face of a solid autofusion of the left SI joint confirmed on post myelogram CAT scan and negative provocative testing of all tests used to assess the SI joint[,] I again repeat that I would not recommend a left SI joint fusion.

Dr. Tomecek reported that Grubbs "appears to really want to have this operation of an SI joint fusion almost whether it helps him or not even though he is really doing very well under all the circumstances." Dr. Tomecek noted that Grubbs was "very comfortable today standing for several minutes walking from room to room and moving and bending."

Grubbs testified at a hearing before an ALJ in November 2023 that he had not proceeded with the surgery recommended by Dr. Blankenship in December 2022 because his condition had temporarily gotten better. He testified that, while sitting in his recliner, he had stretched his leg out and heard something "pop" in his SI joint. Grubbs said that he felt relief after that "pop" for two or three weeks but that he could not duplicate that effect. He testified that his pain seemed to "come back with a vengeance." Grubbs testified that he uses an over-the-counter anti-inflammatory medication and sometimes takes a muscle relaxer. He

7

said that he has a TENS unit and a lidocaine pain patch for his back. Grubbs agreed that he testified in May 2021 that he could not work after his lumbar-fusion surgery and that he still cannot work. He testified that he takes far fewer medications now and takes no pain medication. Grubbs conceded that he was able to drive on a trip to Virginia; he fishes every two weeks or so; and he helped unload his bass boat into the water. Grubbs testified that his understanding of the SI joint-fusion surgery recommended by Dr. Blankenship is that it would take about fifteen minutes and was "not that big of a deal."

An ALJ found that Grubbs was entitled to additional medical treatment, including SI joint surgery recommended by Dr. Blankenship. The ALJ also found that Grubbs was entitled to TTD benefits from September 13, 2022, and continuing through a date yet to be determined. The appellee employer appealed to the Commission, which reversed the ALJ's decision.

The Commission noted that Grubbs's MVA on August 7, 2015, resulted in a compensable injury affecting his cervical, thoracic, and lumbar spine and that he had reached MMI on August 31, 2015. Referring to its October 2018 opinion, the Commission noted that it had found that Grubbs had proved entitlement to Dr. Blankenship's *current treatment recommendations* and that he was entitled to *conservative medical treatment* recommended by Dr. Blankenship. The Commission noted that the appellee employer had nevertheless authorized lumbar arthrodesis performed by Dr. Blankenship on April 9, 2020. The Commission also found that the appellee employer had paid a 12% permanent anatomical-impairment rating and that the parties had stipulated that Grubbs reached MMI on October

8

22, 2020. The Commission found that, because Grubbs had not consistently reported relief from the arthrodesis, he continued to receive treatment and eventually saw Dr. Tomecek for an IME. The Commission noted that Dr. Tomecek disagreed with Dr. Blankenship's recommended surgery because Grubbs's left SI joint was already fused. The Commission found that Dr. Tomecek was more credible than Dr. Blankenship and that Dr. Tomecek's expert opinion was entitled to more evidentiary weight. The Commission noted that it had awarded conservative treatment in October 2018, that conservative treatment such as physical therapy and injections had seemed to benefit Grubbs after the 2020 surgery, and that Dr. Tomecek was recommending additional conservative treatment for Grubbs's SI joint condition. Regarding TTD benefits, the Commission pointed out that it had found in its October 2018 opinion that Grubbs reached the end of his healing period no later than August 31, 2015, that there had been no appeal of that decision, and that the parties had stipulated that the prior opinions were final. The Commission found that the parties nevertheless stipulated that Grubbs reached MMI on October 22, 2020, from the April 2020 surgery. Moreover, the Commission noted that, although the appellee employer paid a permanent anatomical-impairment rating and some TTD benefits until February 2022, the evidence did not demonstrate that Grubbs reentered a healing period at any time after October 22, 2020. In conclusion, the Commission found that Grubbs did not prove that an SI joint arthrodesis was reasonably necessary but that he is entitled to additional physical therapy and injection treatment by Dr. Cannon. The Commission found that Grubbs did

not prove entitlement to additional TTD benefits and pointed out that an award of additional conservative treatment did not extend Grubbs's healing period.

## II. *Standard of Review*

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Johnson v. Land O'Frost, Inc.*, 2025 Ark. App. 41, 704 S.W.3d 671. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Id.* It is the Commission's duty to make determinations of credibility and to weigh the evidence. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*

## III. *Discussion*

### A. Reasonably Necessary Medical Treatment

The employer shall promptly provide for an injured employee such medical treatment as may be reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a)(1) (Repl. 2012). Reasonably necessary medical treatment may include that which is necessary to accurately diagnose the nature and extent of a compensable injury, to reduce or alleviate symptoms resulting from a compensable injury, to maintain the level of healing achieved, or to prevent further deterioration from the damage produced by

the compensable injury. *Wright Steel & Mach., Inc. v. Heimer*, 2017 Ark. App. 643, 535 S.W.3d 311. The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Id.*

Grubbs argues that the Commission's primary error when it reversed the ALJ was in its failure to grasp the nature and cause of his sacroiliac injury. He argues that the Commission referred to its 2018 opinion awarding conservative treatment, apparently believing that his condition has been static for the five years leading up to its May 2024 opinion. Grubbs argues that both Drs. Blankenship and Tomecek agreed that his SI joint condition is a degenerative condition brought about by his 2015 compensable injury and the 2020 surgery, which was reasonable and necessary medical treatment. Grubbs contends that his condition improved after the 2020 surgery but that the SI joint condition began to manifest. Grubbs argues that both Drs. Blankenship and Tomecek agree that further treatment is needed for his SI joint condition but disagree as to the nature of that treatment. According to Grubbs, Dr. Tomecek thinks a revision of the prior fusion or removal of the osteophyte might be necessary, while Dr. Blankenship thinks that an SI joint fusion is needed. Grubbs argues that the surgery recommended by Dr. Blankenship is less invasive and dangerous than the treatment recommended by Dr. Tomecek and that he (Grubbs) has more confidence in Dr. Blankenship. Grubbs asserts that a fair-minded person would conclude that the option offered by Dr. Blankenship is more compelling.

The Commission has the duty of weighing the medical evidence as it does any other evidence, and the Commission has the authority to accept or reject medical opinions. *Cooper*

11

*Standard Auto., Inc. v. Kelley*, 2009 Ark. App. 552, 337 S.W.3d 542. When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Id*. The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict, and this court is powerless to reverse the Commission's decision regarding which medical evidence it chooses to accept when that evidence is conflicting. *Id*.

The Commission was presented with two conflicting medical opinions and chose to believe Dr. Tomecek and give more weight to his opinion. Contrary to Grubbs's assertion, Dr. Tomecek did not diagnose sacroiliitis, although he noted that it was a possibility. Moreover, he particularly disagreed with Dr. Blankenship's recommended treatment of an SI joint fusion to treat Grubbs's condition. Dr. Tomecek explained, after examining a myelogram CT scan, that the joint was already fused and that Dr. Blankenship's proposed treatment was dangerous, not to mention unnecessary. Although Dr. Tomecek mentioned hardware removal and fusion revision, he was referring to the fact that he thought Grubbs had pseudoarthrosis, not sacroiliitis. Dr. Tomecek also described surgery to remove the osteophyte as a "last resort." Dr. Tomecek recommended conservative treatment such as physical therapy and injections, which had seemed to help Grubbs in the past.

Grubbs likens his case to *Foster v. Kann Enterprises*, 2009 Ark. App. 746, 350 S.W.3d 796; however, *Foster* is distinguishable. Foster suffered a compensable injury, and his treating physician recommended physical therapy and, alternatively, injections. Due to preexisting problems, Foster was unable to participate in physical therapy. His treating physician

12

terminated treatment, and Foster requested and was granted a change of physician. The new physician recommended, among other things, injections, which had not been administered after physical therapy failed. We said that it was of "paramount importance" that Foster's treating physician and the physical therapist had terminated treatment before Foster reached MMI. We held that the treating physician and the new physician recommended injections as reasonable treatment for Foster's neck injury and that the fact that physical therapy had proved unsuccessful was not a substantial basis for the denial of additional treatment—injections recommended by both physicians.

Here, Dr. Blankenship and Dr. Tomecek do not agree that SI joint fusion surgery is reasonably necessary medical treatment for Grubbs. In fact, they do not agree on a diagnosis. Grubbs asserts that "Dr. Tomecek says the claimant has sacroiliitis." Dr. Tomecek wrote that the findings were consistent with that diagnosis, as well as several other conditions, and that further diagnostic testing was necessary for a definitive diagnosis. Considering the evidence in the light most favorable to the Commission's findings and deferring to the Commission's interpretation of the medical evidence, we hold that there is a substantial basis for the denial of relief.

## B. TTD Benefits

Temporary total disability is defined as that period within the healing period in which an employee suffers a total incapacity to earn wages. *J.A. Riggs Tractor Co. v. Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990). The healing period is defined as "that period for healing of an injury resulting from an accident." Ark. Code Ann. § 11-9-102(12) (Supp. 2021). The

healing period continues until the employee is as far restored as the permanent character of the injury will permit. *Etzkorn*, *supra.* If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended; however, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Id.* Whether the healing period has ended is a factual determination to be made by the Commission. *Bronco Indus. Servs., LLC v. Brooks*, 2021 Ark. App. 279, 625 S.W.3d 753.

Grubbs argues that the Commission ignored medical evidence showing that his SI joint condition had begun to deteriorate as a result of his compensable spinal injuries and treatment, including the 2020 surgery. Grubbs maintains that, while he received treatment, he entered and left healing periods on more than one occasion. He states that it is apparent from Dr. Blankenship's report on May 6, 2021, that he had reentered a healing period as evidenced by his need for treatment of his SI joint. Grubbs asserts that even Dr. Tomecek agreed that his SI joint was the source of his problems when he stated on December 1, 2021, that Grubbs was suffering from sacroiliitis. Again, Grubbs has misconstrued Dr. Tomecek's opinion because he reported that no diagnosis had been definitively established, and the Commission credited Dr. Tomecek's opinions.

As for Grubbs's assertion that he cannot work, a functional capacity evaluation in November 2020, i.e., after Grubbs had reached MMI from his lumbar surgery, indicated that he could perform light-duty work. Dr. Blankenship reported that Grubbs had reached MMI in February 2022 after Grubbs reported that his SI joint pain was completely resolved.

Moreover, Dr. Tomecek's May 2023 progress notes as well as Grubbs's own testimony indicate that Grubbs was getting around well and taking fewer medications generally, including pain medication.

Grubbs argues that because he is receiving treatment for his SI joint condition, he is still within his healing period because the conservative treatment is geared toward improving his condition, which is not yet stable. Even though the Commission approved continued conservative treatment for Grubbs, this did not extend his healing period or cause him to reenter a healing period because the injections and physical therapy provided only temporary relief. The persistence of pain is not sufficient, in itself, to extend the healing period. *Smallwood v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 466, 375 S.W.3d 747. Moreover, pain management that does not improve the underlying condition does not extend the healing period. *Id.* Grubbs acknowledges in his brief that "while injections and physical therapy might provide some short-term relief for the appellant, they are not going to cure the appellant's condition or improve his current status."

The parties stipulated that Grubbs reached MMI on October 22, 2020, from the 2020 surgery performed by Dr. Blankenship—a surgery that the Commission had not found was reasonably necessary medical treatment. In addition, the appellee employer paid a 12% permanent-impairment rating assessed by Dr. Blankenship. Permanent impairment is any permanent functional or anatomical loss remaining *after* the healing period has been reached. *Johnson v. Gen. Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994). We hold that

there is a substantial basis for the denial of additional TTD benefits because Grubbs did not prove that he reentered a healing period after October 22, 2020.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellees.