Cite as 2025 Ark. App. 424

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-498

| | |
|---|---|
| LISA SOWELL<br><br>APPELLANT | Opinion Delivered September 10, 2025 |
| V.<br><br>EVERGREEN PACKAGING, LLC; ACE AMERICAN INSURANCE COMPANY; AND GALLAGHER BASSETT SERVICES, INC.<br><br>APPELLEES | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSON<br>[NO. G804085]<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Lisa Sowell appeals from the Arkansas Workers' Compensation Commission's (Commission's) opinion and order affirming as modified the administrative law judge's (ALJ's) decision. Specifically, the Commission found that the Arkansas Workers' Compensation Act (AWCA) is constitutional and applicable; that the functional capacity evaluation (FCE) was relevant and admissible; that appellant failed to prove that additional medical treatment was reasonably necessary but that she had proved she was entitled to another change of physician if she so desired; and that appellant was not credible and failed to prove that she is permanently and totally disabled. Appellant argues on appeal that (1) she was denied due process and equal protection under the Fourteenth Amendment due to

the relationship of her treating physician, Victor Vargas, to appellee Evergreen Packaging and because[1] of the workers'-compensation rules of evidence; (2) the FCE is completely subjective and not admissible in any court; (3) Arkansas Code Annotated section 11-9-705(a),[2] which allows subjective evidence, conflicts with Arkansas Code Annotated section 11-9-102,[3] which requires objective evidence to establish a medical workers'-compensation injury; and (4) appellant tried to preserve her employment by requesting an accommodation. We affirm.[4]

Appellant suffered a compensable lower back injury on May 31, 2018, while working as a service operator for appellee Evergreen. On the date in question, appellant fell down three stairs while returning to her office and was knocked unconscious. She was initially seen at the emergency room at Jefferson Regional Medical Center (JRMC) with complaints of bilateral hand pain, right knee pain, and lower back pain. She was diagnosed with contusions of both hands, a knee contusion, and a lumbar strain. Appellant's primary physician, Dr. Tim Wilkins, ordered an MRI of appellant's lumbar spine. The MRI, taken on June 15, showed "[l]eft neural foraminal zone disc protrusions at L3-L4 and L4-L5 without

---

[1]"Because" was added to try and make the argument easier to follow.

[2](Supp. 2023).

[3](Supp. 2023).

[4]This is the second time this case has been before us. We initially ordered rebriefing due to deficiencies in appellant's brief. *See Sowell v. Evergreen Packaging, LLC*, 2024 Ark. App. 498.

neural foraminal narrowing." On July 2, appellant went to JRMC with complaints of mid and lower back spasms and right-side neck pain. She was seen at JRMC on July 6 with complaints of low back pain that was shooting down her left leg. In a follow-up, Dr. Wilkins diagnosed appellant with cervical pain, prolapse of lumbar intervertebral disc without radiculopathy, and low back pain. He opined that there was no way to connect appellant's neck pain to her fall. Appellant was ordered to follow up with Dr. Victor Vargas.

Dr. Vargas evaluated appellant on July 9. He placed her on light duty, with no lifting or pushing more than five pounds, and no bending over. Physical therapy was recommended. Dr. Vargas noted on August 6 that appellant was not improving, "despite treatment with physical therapy and medications." He stated that he informed appellant that her MRI report showed "no objective findings of injury to the lumbar spine. The MRI showed degenerative disc disease and facet arthropathy." He ordered an electromyography and nerve conduction study on appellant's left lower extremity.[5] He noted that if appellant "has no improvement with the physical therapy[6] and the electromyography showed no evidence of acute injury to the nervous structures[, appellant] most certainly will reach maximum medical improvement [MMI]." Appellant was to continue light-duty work with the same restrictions. The study on appellant's lower extremities was performed on August

---

[5]He recommended that appellant work on losing weight.

[6]Appellant's therapist had noted that appellant's complaints were inconsistent with her injury and that appellant was probably suffering from multiple level degenerative changes.

23 and showed no "electrodiagnostic evidence of a lumbar radiculopathy, peripheral neuropathy, or focal tibial or peroneal nerve entrapment," and appellant's L2-3 muscles "were screened and were normal due to thigh complaints, no focal internal femoral cutaneous sensory loss was seen on physical exam." Appellant was seen by Dr. Vargas on September 6. Dr. Vargas reviewed the MRI again and noted that there was no evidence of nerve root impingement at any level that explained appellant's symptomatology of numbness in her thighs. He stated that it was unclear why appellant was not responding to conservative management. He recommended an injection at the facet of L4-L5 bilaterally. He continued appellant on light-duty work with the same restrictions. Appellant received an injection on September 18.

Appellant followed up with Dr. Vargas on October 4. Dr. Vargas noted that appellant had been "treated for 4 months with different modalities for the low back pain without specific objective finding of injury to the lumbar spine." He stated that at this point, he believed appellant had "exhausted the conservative treatment for her lower back pain and [appellant] has reached [MMI]." He noted that appellant would be returned to work full duty. However, he said that since appellant stated she was unable to work, he was ordering an FCE for objective findings. He opined that appellant was entitled to a "0% permanent impairment in regards to her lower back pain." Appellant underwent the FCE on October 15. The FCE reported unreliable results in that appellant put forth unreliable effort with inconsistencies found on fourteen out of fifty measurements. It was found that appellant could perform work in at least the sedentary classification. The FCE noted that since

4

appellant's efforts were unreliable, her actual abilities could be higher than what was demonstrated during the evaluation. Dr. Vargas released appellant to full duty without restrictions on October 22.

Appellant sought and was granted a change of physician in June 2019. Dr. Noojan Kazemi was to be appellant's new physician. Dr. Kazemi canceled appellant's initial appointment because Evergreen would not pay for a new MRI as part of the first-time visit. Appellant subsequently received a Social Security MRI of her cervical and lumbar spine on September 18. The lumbar spine showed no compression fractures and mild degenerative disc disease at L3-4 and L4-5 with no evidence of spinal canal or neural foraminal narrowing at any level. The cervical spine showed no acute posttraumatic abnormalities and multilevel degenerative changes in the mid to lower cervical spine. Appellant was involved in a motor vehicle accident on November 11 and presented to JRMC with complaints of neck and back pain following the accident. An MRI of her lumbar spine was unremarkable.[7]

Appellant filed a claim with the administrative law judge (ALJ), claiming that she is permanently and totally disabled because of her May 31, 2018 compensable injury. She also contended that the AWCA is unconstitutional because it denied her due process and equal protection under the Fourteenth Amendment and that she was entitled to additional medical treatment. Appellant's attorney objected to the introduction of the FCE at the December 1, 2022 hearing, contending that it was inadmissible because it was not objective

---

[7]Appellant was approved for Social Security Income benefits in March 2022 on the basis that she is disabled.

5

evidence. The ALJ found that the AWCA is constitutional and applicable; that appellant failed to show that she is permanently and totally disabled; and that appellant failed to show that she was entitled to additional medical treatment—specifically, an additional MRI and physical therapy.

Appellant appealed the ALJ's decision to the Commission. The Commission found that the AWCA is constitutional and applicable; that the FCE was relevant and admissible; that appellant failed to prove that additional medical treatment was reasonably necessary but that she had proved she was entitled to another change of physician if she so desired; and that appellant was not credible and failed to prove that she is permanently and totally disabled. Appellant timely appealed this decision.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence.[8] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[9] The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm.[10] It is the Commission's duty to make

---

[8] *Johnson v. Land O'Frost, Inc.*, 2025 Ark. App. 41, 704 S.W.3d 671.

[9] *Id.*

[10] *Id.*

6

determinations of credibility and to weigh the evidence.[11]  The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief.[12]

The employer shall promptly provide for an injured employee such medical treatment as may be reasonably necessary in connection with the injury received by the employee.[13] Reasonably necessary medical treatment may include that which is necessary to accurately diagnose the nature and extent of a compensable injury, to reduce or alleviate symptoms resulting from a compensable injury, to maintain the level of healing achieved, or to prevent further deterioration from the damage produced by the compensable injury.[14] The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary.[15]

Appellant argues on her first point on appeal that she was denied due process and equal protection under the Fourteenth Amendment due to the relationship of her treating physician, Dr. Vargas, to appellee Evergreen Packaging and because of the workers'-

---

[11]*Id.*

[12]*Id.*

[13]Ark. Code Ann. § 11-9-508(a)(1) (Supp. 2023).

[14]*Wright Steel & Mach., Inc. v. Heimer*, 2017 Ark. App. 643, 535 S.W.3d 311.

[15]*Id.*

compensation rules of evidence. Arkansas Code Annotated section 11-9-514(3)(A)(i)[16] states that an "employer shall have the right to select the initial primary care physician from among those associated with managed care entities certified by the commission as provided in § 11-9-508." According to appellant, since Dr. Vargas was a part of Evergreen's certified management care organization, there was some sort of unspoken loyalty he owed to Evergreen, which violated her due-process and equal-protection rights. Appellant contends that this loyalty led to Dr. Vargas's decision to return her to full duty without restrictions after initially placing her on light duty with restrictions. However, appellant has failed to point to any facts to support this contention. In fact, the opposite seems to be true: Dr. Vargas testified in his deposition that "workers['] comp companies sent patients to our company in OrthoArkansas to be evaluated . . . , but that doesn't mean that we're part of any of their associations. We are independent, a medical institution, a medical facility. We see patients for what they refer to us." He denied having any contract with Evergreen. Dr. Vargas also stated that although appellant complained of back pain, he could not find any specific injury her complaints. He said that the MRI performed on appellant before she was seen by him did not show injury, only spinal degeneration. He testified that he gave appellant a 0 percent impairment rating because he could find no objective evidence of an injury resulting from her fall at work.

---

[16](Supp. 2023).

Regarding the AWCA, Act 796 of 1993, it is well-settled Arkansas law that a statute is presumed to be constitutional and will be struck down only when there is a clear incompatibility between the statute and the state constitution.[17] Appellant bears the burden of establishing a violation of her due-process rights.[18] Administrative agencies, which like the Commission are quasi-judicial, do not, in and of themselves, violate due process.[19] Appellant has failed to present convincing evidence that the AWCA is unconstitutional or that her due-process rights were violated. Accordingly, we affirm.

Appellant argues next that the FCE is completely subjective and not admissible in any court. She contends that the FCE did not meet the *Daubert*[20] standard and should not have been admitted during the hearing. Appellant further argues that the admission of the FCE denied her due process and equal protection. In conducting a hearing, the Commission shall not be bound by technical or statutory rules of evidence or by technical or formal rules

---

[17]*Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007).

[18]*Id.*

[19]*Id.*

[20]In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court held that a trial court must make a preliminary assessment of whether the reasoning or methodology underlying expert testimony is valid and whether the reasoning or methodology has been properly applied to the facts of the case. *Richardson v. Union Pac. R.R. Co.*, 2011 Ark. App. 562, 386 S.W.3d 77. The objective of a *Daubert* inquiry is to ensure the relevance and reliability of expert testimony and to make certain that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 385 S.W.3d 822.

of procedure but may conduct the hearing in a manner as will best ascertain the rights of the party.[21] Appellant argues that the FCE was subjective and thus unreliable. She maintains that because the FCE is subjective, it should not have been admitted into evidence. The Commission is empowered to allow into the record whatever evidence it sees fit.[22] Appellant offers no convincing argument that the Commission erred by admitting the FCE into evidence or that by doing so, it deprived her of due process and equal protection.

As her third point, appellant argues that Arkansas Code Annotated section 11-9-705(a), which allows subjective evidence, conflicts with Arkansas Code Annotated section 11-9-102, which requires objective evidence to establish a medical workers'-compensation injury. However, we do not address this argument because appellant failed to put forth anything but case law in her brief on this point. She did not raise an argument until her reply brief. An argument raised for the first time on reply comes too late.[23]

Finally, appellant argues that she tried to preserve her employment by requesting an accommodation. The Commission found that appellant was not a credible witness with regard to her returning to appropriate gainful employment and found that she did not attempt to return to work with Evergreen or any other employer once she was released to full duty. It further found that appellant's demonstrated lack of interest in returning to work

---

[21]Ark. Code Ann. § 11-9-705(a)(1) (Supp. 2023).

[22]*Stoker v. Thomas Randal Fowler, Inc.*, 2017 Ark. App. 594, 533 S.W.3d 596.

[23]*Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005).

is an impediment to a full assessment of her contention that she is permanently and totally disabled. She points to her testimony that she unsuccessfully sought an accommodation with Evergreen. She also states that Evergreen accommodated another injured employee, but not her. It must be noted that appellant did not appeal the Commission's finding that she was not permanently and totally disabled; therefore, even if she unsuccessfully sought accommodation from Evergreen when she was placed on light duty, that had no bearing on her failure to return to work once the restrictions were lifted. This failure negatively affected her request to be found permanently and totally disabled.

Affirmed.

VIRDEN and TUCKER, JJ., agree.

*Larry J. Steele, PLC*, by: *Larry J. Steele*, for appellant.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellant.

11